62488, 62605, 62606. WHIDDON v. THE STATE (three cases).

POPE, Judge.

Merline Whiddon and Sue Pollock were indicted on four counts of violating the Georgia Controlled Substances Act. Count I charged them with possession of pethidine (Demerol); Count II, possession of ethchlorvynol (Placidyl); Count III, possession of diazepam (Valium); Count IV, possession of butorphanol tartrate (Stadol). Pollock pled guilty to Counts I, II and IV; the state entered nolle prosequi as to Count III. Pollock testified on behalf of the state at Whiddon's trial. Following that trial, Whiddon was found guilty as to Counts II and III and was acquitted as to Counts I and IV. In addition to an appeal alleging 16 trial-related enumerations of error, Whiddon appeals the trial court's denial of her request for bond pending appeal and also the trial court's transferring her sua sponte from the county in which she was convicted to custody in another county.

*The Trial*

1. At the time appellant and Pollock were alleged to have come

into possession of the controlled drugs named in the indictment, appellant was the director of nursing at Grady General Hospital in Cairo, Georgia. The drugs were purportedly acquired from the hospital's pharmacy on the pretense of being dispensed to patients but converted to appellant's and Pollock's personal use. During the course of the state's investigation of this case, appellant gave an incriminating, written statement to two law enforcement officers. She first enumerates as error certain findings made by the trial court following a Jackson-Denno[1] hearing held for the purpose of determining the voluntariness of that statement.

The transcript of the hearing shows that although both law enforcement officers were sworn as witnesses at the hearing, the state utilized the testimony of only one and then rested its case. Appellant chose not to offer any evidence but argued that the state had not established a prima facie showing of voluntariness because only one half of the "team" had testified. The trial court ruled that even though only one of the officers had testified, the state had established "a prima facie case of voluntariness sufficient to submit to the jury."

The transcript of the hearing clearly reveals that the trial court made the required primary finding of voluntariness before appellant's statement was introduced at trial. See *Brazell v. State,* 140 Ga. App. 340 (231 SE2d 105) (1976); *Jackson v. State,* 124 Ga. App. 488 (2) (184 SE2d 185) (1971). That finding of voluntariness is supported by a preponderance of the evidence. See *Highfield v. State,* 246 Ga. 478 (6) (272 SE2d 62) (1980). Although the state offered only the testimony of one of the officers, appellant was fully aware that two law enforcement officers had been present when she made her statement. The officer who did not testify was available at the hearing, yet appellant elected to offer no evidence in rebuttal. Under the circumstances in this case we are not persuaded that the state's failure to call both officers denied appellant her right to a full investigation of all circumstances surrounding her statement. Compare *Porter v. State,* 143 Ga. App. 640 (2) (239 SE2d 694) (1977). See also *Greeson v. State,* 97 Ga. App. 245 (2) (102 SE2d 503) (1958). Therefore, enumerations Nos. 1 and 2 are without merit.

2. Appellant's enumerations Nos. 3 through 11 inclusive cite as error several instructional deficiencies in the trial court's charge to the jury. The record shows that following that charge, the trial court inquired as to whether either party had any objection to the charge; both appellant and the state responded in the negative. Accordingly, "appellant has waived [her] right to enumerate error by failing to

---

[1] Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

respond to the court's inquiry on any objections to the charge." *White v. State,* 243 Ga. 250, 251 (253 SE2d 694) (1979). In any event, our review of the entire charge given in this case reveals no error for any reason asserted by appellant.

3. In her twelfth enumeration appellant asserts that the trial court "throughout the defense of the case . . . intimated an opinion as to the facts which may or may not have been proved, was argumentative, and prosecutorial in tenor, manner and tone."

The tone of voice or emphasis used by the trial court is not reviewable. *Williams v. State,* 170 Ga. 886 (3) (154 SE 363) (1930); *Perdue v. State,* 147 Ga. App. 648 (9) (249 SE2d 657) (1978). Moreover, the trial court may propound questions to any witness for the purpose of fully developing the truth of the case; the extent of such an examination is a matter within the sound discretion of the court. *Wilson v. State,* 229 Ga. 224 (2) (190 SE2d 78) (1972). The trial transcript in this case does not support appellant's assertion of judicial misconduct in this regard. While the trial court in this case did ask occasional questions of witnesses, nothing in the transcript even remotely resembles a situation in which the trial court intimated an opinion as to the facts of the case or in which questioning by the trial court was marked by a prosecutorial zeal such as to prevent a fair trial. Compare *Brundage v. State,* 143 Ga. App. 1 (2) (237 SE2d 473) (1977); United States v. Hoker, 483 F2d 359 (1) (5 Cir. 1973). We find this enumeration to be without merit.

4. During the course of the trial the court ruled inadmissible certain tape recordings which contained conversations between appellant and Sue Pollock on the ground that a proper foundation had not been laid. However, the state was later permitted over objection to cross examine appellant as to one of these conversations for the purpose of impeachment. This was not error. Harris v. New York, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971). Accord, United States v. Havens, 446 U. S. 620 (100 SC 1912, 64 LE2d 559) (1980); Oregon v. Haas, 420 U. S. 714 (95 SC 1215, 43 LE2d 570) (1975). Enumeration No. 13 is without merit.

5. Appellant contends that the trial court failed to rule on the admissibility of State's Exhibits 1 — 14 thereby denying her the opportunity to properly conduct her defense. However, since Exhibits 1 — 13 concerned only Count 1 of the indictment and appellant was acquitted on that count, any error in the trial court's failure to rule as to the admissibility of those exhibits was harmless. The record contradicts appellant's contention that the trial court failed to rule on the admissibility of State's Exhibit 14, appellant's written statement. Accordingly, enumeration No. 14 has no merit.

6. During cross examination of the hospital's chief of security,

appellant sought to inquire into the chief's social relationship with another hospital employee for the purpose of impeachment. The trial court sustained the state's objection to the question on the basis that this information had no relevance to the issues in the case. A witness may not be impeached as to a matter which has no relevance to the substantial matters in dispute. *Hill v. State,* 159 Ga. App. 489 (2) (283 SE2d 703) (1981); *Gilbert v. State,* 159 Ga. App. 326 (2) (283 SE2d 361) (1981). Since the social life of the hospital's chief of security had no bearing on the issues in this case, appellant's enumeration No. 15 is not meritorious.

7. In her sixteenth enumeration appellant challenges the sufficiency of the evidence to support the verdict. Appellant's admitted accomplice, Sue Pollock, testified at trial that she had supplied appellant with Placidyl and had observed appellant take Valium from the hospital's emergency room. Pollock was a licensed practical nurse (LPN) at Grady General Hospital; appellant was her supervisor during the time period relevant to this case. Pollock was not legally permitted to dispense drugs absent a doctor's order. Although appellant introduced evidence showing that she had a prescription for both Placidyl and Valium, she admitted at trial that she had obtained Valium from Pollock. In her sworn statement appellant admitted that she had obtained Placidyl from Pollock. In neither instance was Pollock authorized to dispense the drugs to appellant. Viewing the evidence in this case in a light most favorable to upholding the verdict, we conclude that any rational trier of fact could have found that appellant had illegally obtained both Placidyl and Valium in violation of the Georgia Controlled Substances Act. Compare *Wood v. State,* 156 Ga. App. 810 (1) (275 SE2d 694) (1980).

### The Bond

8. Following her conviction and sentencing appellant filed a motion to stay execution of the judgment and for bond pending her appeal. After a hearing this motion was denied on two grounds. The trial court found (1) there was a substantial risk that appellant would pose a danger to others and was likely to commit a serious crime, and (2) her appeal was frivolous and taken only for the purpose of delay.

" 'The granting or refusing of bail in felony cases after indictment and conviction is a matter within the sound discretion of the trial court, and this court will not control that discretion unless it has been flagrantly abused.' *Watts v. Grimes,* 224 Ga. 227 (161 SE2d 286) (1968). '(T)he burden of seeking a stay of execution and a release on bond is upon the applicant.' *Moore v. State,* 151 Ga. App. 413, 414 [260 SE2d 350] (1979)." *Chatham v. State,* 153 Ga. App. 483 (265 SE2d 835) (1980). In *Birge v. State,* 238 Ga. 88 (230 SE2d 895) (1976),

our Supreme Court set forth standards by which to determine whether bail pending appeal should be granted or denied. An affirmative finding by the trial court that any *one* of the standards has been met will support the denial of the appeal bond. *Moore,* supra. The trial court in this case affirmatively found that several of the standards had been met. The trial court based his decision on the evidence submitted at the hearing on appellant's motion for bail as well as that submitted at trial.

Evidence presented at trial showed that appellant regularly appeared to be under the influence of drugs (slurred speech, violent shifts in mood, unable to remember what she had said from one minute to the next). The evidence also showed that appellant not only illegally obtained restricted drugs on her own but also coerced others to obtain such drugs on her behalf. This evidence would support a conclusion that appellant had developed a dependency on or addiction to these dangerous drugs. No evidence was presented at the bail hearing which showed that appellant had overcome this serious drug problem. Accordingly, the trial court did not abuse his discretion by denying an appeal bond on the basis that appellant was likely to commit a serious crime. This finding alone is sufficient to require that appellant be retained in custody, so we do not consider the merits of the trial court's further findings that appellant would pose a danger to others and that her appeal was frivolous and taken only for delay.

## The Transfer

9. Appellant was convicted in the Superior Court of Grady County on March 26, 1981. Following her conviction, she was housed in the Grady County Jail. On May 1, 1981 the trial court issued an order sua sponte transferring appellant and two other female inmates of the Grady County Jail (all convicted felons) to the custody of the Decatur County Sheriff pending a final disposition of their cases on appeal. Both Grady County and Decatur County lie within the South Georgia Judicial Circuit. Code Ann. § 24-2501. The trial court based his ruling on his "concern for the welfare of said inmates in view of the concern expressed by J. Patrick Ward, Counsel for two of said inmates [including appellant], as evidenced by a recent Order rendered by him in his capacity as Judge of the State Court of Grady County, Georgia . . ."

In its March, 1981 presentments the Grady County Grand Jury found conditions at the county jail "not as clean and orderly as desired" due to overcrowding. The state court judge issued an order based thereon which prohibited any person charged or convicted of a misdemeanor from being incarcerated in the jail if the inmate

population exceeded 28 prisoners. County officials were also directed to improve maintenance, operation and administration of the jail in order to comply with pertinent rules, statutes and court decisions. Shortly thereafter, the state court judge ordered that no female sentenced in state court was to be incarcerated in the jail "in the absence of a female detention supervisor to protect the security of the institution and to protect the security of the inmates themselves." The sheriff was directed to "eliminate any possibility of physical, verbal or visual abuse of any female housed in the Grady County Jail . . . by detention personnel of the opposite sex."

In this appeal appellant contends that her transfer by the trial court "was unauthorized by law and void." She complains that the transfer unduly interfered with her right to confer with her counsel during the pendency of the appeal of her conviction. The issue we address in this case is whether a superior court judge is vested with the authority to transfer a prisoner from the jurisdiction in which he was convicted to another jurisdiction pending the outcome of the prisoner's appeal.

"Where any person shall be convicted of any . . . felony, and sentenced to serve time in any penal institution in this State . . ., he shall be committed to the custody of the Commissioner of Offender Rehabilitation, who, with the approval of the Board of Offender Rehabilitation, shall designate the place of confinement where the sentence shall be served." Code Ann. § 77-309 (b). However, except in situations hereinafter mentioned, the Commissioner does not take physical custody of a prisoner until after all appeals or other motions have been disposed of so that the conviction has become final. Code Ann. § 77-309 (c) and (d); *In re Prisoners Awaiting Transfer,* 236 Ga. 516 (2) (224 SE2d 905) (1976).

Under the authority of Code Ann. §§ 77-338 through 77-341 inclusive and upon request of a prisoner or his attorney or both, the trial court may transfer the prisoner to a state prison or county correctional institution pending the outcome of his appeal. The purpose of this law is to permit a prisoner to be transferred to a state prison or county correctional institution when it appears likely that his appeal will be lengthy and he would thus be forced to spend considerable time in a jail not equipped to handle long-term prisoners. Code Ann. § 77-339. Furthermore, if the prisoner constitutes a dangerous condition which the jail is not equipped to handle, the trial court may order the prisoner transferred to an appropriate state or county facility without notice to the prisoner or opportunity for him to be heard. *Sanders v. State,* 246 Ga. 42 (4) (268 SE2d 628) (1980); *Ricketts v. Brantley,* 239 Ga. 151 (236 SE2d 51) (1977). However, in this case neither appellant nor her attorney

requested her transfer, and her presence in the Grady County Jail did not constitute a dangerous condition such as would support her transfer therefrom. See Code Ann. § 77-340.

By statute sheriffs are jailers of the counties and are responsible for the welfare of all prisoners who may be confined in their jails. Code Ann. Ch. 77-1. In *Howington v. Wilson,* 213 Ga. 664 (100 SE2d 726) (1957), the trial court had ordered sua sponte that a prisoner awaiting trial be transferred to a jail in another county because his confinement in the county where he had been indicted would have taxed the jail facilities of that county that were needed to handle other prisoners. The Supreme Court ruled that "the custody of a defendant, pending his trial under an indictment for a criminal offense, is in the sheriff of the county wherein the offense was committed, and the responsibility for his safe and secure confinement in jail is that of the sheriff." *Id.* at 665. Further, "the sheriff and not the judge of the [trial] court has the authority to transfer a prisoner awaiting trial to a jail in another county, and then, only when the jail in the county where the prisoner is confined is 'in an unsafe condition.' " *Id.* Compare *In re Prisoners Awaiting Transfer,* supra. This decision was based in part upon Code Ann. § 77-110 which includes among the duties of the sheriff that he "take all prisoners arrested, or in execution under any criminal or civil process, to the jail of an adjoining county, or to the jail of some other county when more accessible, if the jail of the county shall be in an unsafe condition, under such rules as are prescribed in this Code."

" 'The office of sheriff carries with it, in America, all of its common-law duties and powers, except as modified by statute.' " *Elder v. Camp,* 193 Ga. 320, 322 (18 SE2d 622) (1942). "On the conviction and sentence of a person, it is the duty of the sheriff of the county where the judgment of conviction has been rendered to take such convicted person into custody, and to keep him in custody or dispose of him in accordance with the judgment of the court and the law." 80 CJS 223, Sheriffs and Constables, § 49; see 70 AmJur2d 145, Sheriffs, Police, and Constables § 21; 60 AmJur2d 814, Penal and Correctional Institutions, § 9; Code Ann. § 24-2813 (8). By statute in this state a person convicted of a crime is committed to the custody of the Commissioner of Offender Rehabilitation following the imposition of sentence. However, because the Commissioner does not take physical custody of a prisoner until after his conviction has become final, a person convicted of a crime who has not been bailed must necessarily be incarcerated pending a final resolution of his case, presumably in the jail of the county where he has been convicted.

There is apparently no statutory provision which would

authorize a trial court on his own motion to order the incarceration of a prisoner in a county other than the one where the offense with which he is charged has been committed. *Howington,* supra. Since the authority of the sheriff as jailer extends not only to the custody of prisoners awaiting trial but also to prisoners in execution under criminal process (see Code Ann. § 77-110), it would appear that the decision in *Howington* would be controlling in the case at bar. However, in the early case of *Revel v. State,* 26 Ga. 275, 276 (1858), our Supreme Court ruled, "If the jail of the county, where a conviction is had in a criminal case, is insecure, it is competent for the [trial] court to order the prisoner to be committed to the jail of another county for safe-keeping." Both *Howington* and *Revel* are unanimous, full bench decisions. If there is anything in the *Howington* case which conflicts with the *Revel* case, it must yield to the earlier decision in *Revel,* which has not been reversed or overruled. Accord, *Sturtevant v. Robinson,* 138 Ga. 734 (3) (75 SE 1121) (1912); *Gray v. Gray,* 127 Ga. 345 (56 SE 438) (1906). Accordingly, we conclude that the trial court in the case at bar had the authority, following appellant's conviction, to transfer her to another jail, if he found that the Grady County Jail was insecure or unsafe. Since there was evidence in the record which authorized the conclusion that the Grady County Jail was unsafe for female prisoners, the trial court did not err in ordering that appellant be transferred to a jail in another county.

*Judgments affirmed. Quillian, C. J., and McMurray, P. J., concur.*

Decided January 5, 1982.

*J. Patrick Ward,* for appellant.

*Gilbert J. Murrah, District Attorney, Edward C. Parker, Lee Hawks, Assistant District Attorneys, Nicholas G. Dumich, Assistant Attorney General,* for appellee.