67845. In re IRVIN.

McMURRAY, Chief Judge.

On July 11, 1983, agents of the Georgia Bureau of Investigation intercepted a drug trafficking operation involving a single engine airplane which landed on a rural road in Baker County loaded with approximately 400 pounds of cocaine valued at $85.5 million. Four indi-

viduals were apprehended in connection with this event, indicted on July 18, 1983, and arraigned on August 5, 1983.

Following the arraignment hearing the district attorney presented evidence regarding the facilities of the Baker County jail and personnel of the Baker County sheriff's department. The sheriff of Baker County (respondent herein) testified that he did not have the proper personnel and facilities to securely maintain the custody of the four drug traffickers considering the size of the jail and having other prisoners. The superior court being concerned for the security of the defendants directed the housing and transfer of the defendants to the county jails of three nearby counties. The superior court judge stated: ". . . I am going to direct that [one defendant] be housed in the Calhoun County jail; that [defendant] Brown be housed in the Bainbridge, Decatur County jail; that [another defendant] be housed in the Grady County jail; and that [the remaining defendant] be housed in the Calhoun County jail.

"If you will please notify the sheriffs of those counties that they can come pick up those individuals, and the county commissioners need to be advised that the county will be billed for the expenses associated in connection with the housing of the defendants during whatever period of time it is necessary." These directions by the superior court instructed the respondent to transfer defendant Brown from the Baker County jail to the Decatur County jail in the same judicial circuit. Respondent failed to comply with the superior court's directions that he transfer defendant Brown. Thereafter, on August 10, 1983, defendant Brown was freed from the Baker County jail by force of arms by unknown individuals and remains at large.

Subsequently, a rule nisi issued and was served upon respondent sheriff directing him to appear to show cause why he should not be held in contempt of court by reason of his failure to comply with the superior court's directions as to transferring the custody of the defendant Brown, and also ordering respondent to show cause why he should not be temporarily suspended as sheriff of Baker County. Following a hearing the superior court entered its order finding respondent in contempt of court, directing that respondent be incarcerated for a period of 20 days and pay a fine of $500. The order further stated that respondent be temporarily suspended as sheriff of Baker County until further order of the superior court. Respondent appeals. *Held*:

1. The superior court's direction to transfer the defendants was accomplished orally, and no written order was entered upon the record in the superior court directing respondent to accomplish this transfer. "What the judge orally declares is no judgment until it has been put in writing and entered as such." *McRae v. Smith*, 164 Ga. 23, 24 (7) (137 SE 390). See also *Tyree v. Jackson*, 226 Ga. 690, 694

(2) (177 SE2d 160); *Boynton v. Reeves*, 226 Ga. 202, 203 (173 SE2d 702); *Myers v. Wilson*, 167 Ga. App. 340, 342 (2) (306 SE2d 401).

The respondent sheriff argues that as the directions of the superior court were oral rather than written those directions were unenforceable, void and not a valid basis for an adjudication of contempt. This may be correct in regard to OCGA § 15-1-4 (a) (3). However, the superior court is also authorized to inflict summary punishment for contempt under the circumstances stated in OCGA § 15-1-4 (a) (2). OCGA § 15-1-4 (a) (2) provides that the superior court may inflict summary punishment for contempt of court predicated upon "[m]isbehavior of any of the officers of the courts in their official transactions."

Sheriffs are certainly officers of the superior court. See in this regard OCGA § 15-13-1 et seq. and OCGA § 15-16-1 et seq. Several of the duties of the sheriff involve custody and supervision of persons in custody awaiting trial. It seems clear that conduct of a sheriff in connection with a lawful order to transfer a defendant from the jail in his county to another jail is within the realm of official transactions engaged in by that sheriff. It also would appear that failure of a sheriff to obey a lawful direction by the trial court to transfer a defendant to a jail in another county is misbehavior on the part of the sheriff.

If OCGA § 15-1-4 (a) (2) is construed to apply only to the disobedience by an officer of the court to a written order this provision of our Code is rendered meaningless in that it would be entirely redundant because duplicitous of the provisions of OCGA § 15-1-4 (a) (3). The statutes must be construed so as to render meaning to each and every part where this is reasonably practical. *State of Ga. v. C.S.B.*, 250 Ga. 261, 263 (297 SE2d 260). Therefore, we hold that OCGA § 15-1-4 (a) (2) is intended to impose upon officers of the courts engaged in their official transactions a higher duty to the court than is demanded of the broader group of individuals listed in OCGA § 15-1-4 (a) (3) who are arguably subject to the contempt powers only for failure to comply with those commands of the court spread upon the record in written form. Surely the interrelationship between the court and its officers is of such a complex and on-going nature as to render impractical any requirement that the court must render into a writing spread upon the record of the court any direction to an officer as a prerequisite to compelling obedience to its commands.

Relying upon *Howington v. Wilson*, 213 Ga. 664 (100 SE2d 726), the respondent contends that the superior court was without authority to direct the transfer of the defendants to the jails of other counties for safekeeping. However, in *Whiddon v. State*, 160 Ga. App. 777, 784 (287 SE2d 114), this court held that if there is anything in *Howington* which conflicts with the earlier unanimous full bench decision of *Revel v. State*, 26 Ga. 275, 276 it must yield to *Revel*. In *Revel v.*

*State*, supra, the Supreme Court held that where the superior court determines that the jail of the county in which a defendant is held is insecure it is competent for the superior court to order the defendant to be committed to the jail of any county for safekeeping. Although *Howington* involved a defendant awaiting trial and *Revel* involved a defendant who had been convicted, no distinction of this nature is acknowledged by *Whiddon v. State*, supra, nor do we find any logical basis for such a distinction as in either case the concern for preserving the secure custody of the defendant is the same.

2. We find no authority for that portion of the superior court's order temporarily suspending respondent from his position as sheriff of Baker County. This suspension is purportedly predicated upon the superior court's inherent powers as contemplated by OCGA §§ 15-6-8 and 15-6-9. However, the power to remove officers is executive in its nature and the courts have no inherent power to remove elected officers. Re Opinion of the Justices, 14 NE2d 465, 467, 118 ALR 166. A sheriff is an elected county officer. Constitution of Georgia of 1983, Art. IX, Sec. I, Par. III.

As the factual issues were not submitted to a jury, this is clearly not an application of the provisions of OCGA § 15-6-82 (made applicable to sheriffs by OCGA §§ 15-16-10 and 42-4-4; *Adamson v. Leathers*, 60 Ga. App. 382 (3 SE2d 871)). Nor may the suspension be viewed as further punishment for contempt. *In re Pruitt*, 249 Ga. 190 (288 SE2d 208).

3. " 'The discretion of the judges of the superior courts in all matters pertaining to contempt of their authority and mandates will never be controlled unless grossly abused.' *Hayden v. Phinizy*, 67 Ga. 758, 760." *Miller v. Kaylor*, 116 Ga. App. 668, 669 (4) (158 SE2d 260). See also *Jackson v. State*, 225 Ga. 553, 557 (4) (170 SE2d 281); *Shafer v. State*, 139 Ga. App. 360 (228 SE2d 382). While acknowledging the broad discretion of the superior court, respondent argues that the record shows no evidence of wilful contempt.

The evidence shows that respondent was present in court and aware of the court's direction that the four defendants arrested in connection with the cocaine trafficking be transferred to other jails. Indeed, the respondent acknowledged that he understood that the court's directive as to the transfer of defendants was an order of the court which directed specific action to be taken in regard to the four defendants and that the superior court had given consideration to Brown's medical condition in its rendition of the order to transfer defendant Brown. Three of the defendants were transferred pursuant to the superior court's directive. The fourth defendant, Brown, was not transferred. Respondent seeks to excuse his failure to comply with the superior court's directive to transfer defendant Brown by evidence that he believed a physician had recommended that Brown not be

transferred from the Baker County jail.

Following the arraignment hearing on August 5, 1983, as Brown was being escorted back to his cell in the Baker County jail, he stumbled and began to display symptoms which precipitated some concern that he was suffering some heart problem. Collins, an emergency medical technician, testified that she examined Brown and thought he was probably faking but as a precaution it was agreed between the emergency medical technicians and Sheffield, a deputy sheriff, to transport Brown to a physician. There being no physician available in Baker County, Brown was transported by ambulance to a hospital in Albany. There a physician examined Brown and determined he was not suffering from any heart problem, and according to the testimony of Collins and Sheffield, the physician stated that Brown was a "turkey," meaning he was faking his symptoms.

In the ambulance during the drive back to the Baker County jail Musgrove (an emergency medical technician) told deputy Sheffield that the physician had advised against moving defendant Brown from the Baker County jail. The physician testified that he had not given any advice to that effect and the superior court made a factual determination that Musgrove's statements as to the instructions given by the physician were fabricated.

The deputy related these fabricated instructions of the physician to the respondent. It is partially upon this fabricated medical advice against moving Brown that the respondent relies to excuse his failure to transport Brown to the Decatur County jail.

Additionally, respondent relies upon a telephone conversation with an assistant district attorney regarding the physician's purported advice. Respondent testified that the assistant district attorney indicated he would relay the physician's advice to the superior court and inform respondent if a delay in the transfer of defendant Brown was not acceptable. The assistant district attorney denied that such an understanding was reached but acknowledged discussing the matter with respondent, that he did "attempt to interpret the Court's order" and told respondent it would be all right to delay the transfer.

Over four days passed between the time of the return of Brown from the hospital to the Baker County jail and his escape. There appears to have been ample time and opportunity (there was evidence as to the availability of the superior court during the time involved) for the respondent to communicate with the superior court regarding the purported instructions from the physician not to transport Brown. The absence of any such action by the respondent might be explained by his account of his telephone conversation with the assistant district attorney. However, the testimony of the assistant district attorney which the superior court was authorized to accept as the truth, related that there was no agreement as testified to by the re-

spondent, imposing upon the assistant district attorney a commitment to communicate with the superior court on behalf of the respondent as to this matter. The respondent is presumed to have knowledge that neither the physician nor the assistant district attorney possessed the authority to overrule the superior court's directive and was confronted with a logical inconsistency between the physician's purported instructions and the fact that the physician permitted Brown to be transported back to Baker County with its meager medical facilities. Furthermore, the respondent was aware of the superior court's knowledge of Brown's previous medical complaints at the time of the directive for Brown's transfer.

While the evidence relied upon by the respondent was sufficient to create issues of fact in regard to the respondent's decision to delay transport of defendant Brown these factual issues were resolved against respondent by the superior court.

We cannot conclude from the evidence presented that the superior court abused its discretion in finding the respondent to be in wilful contempt of court as the respondent had ample opportunity when presented with the fabricated medical advice against moving Brown to inform and seek further direction from the superior court. Additionally, respondent was well aware that the assistant district attorney lacked authority to issue "advice" which, in effect, countermanded the superior court's directive.

The judgment of contempt and imposition of punishment upon respondent is affirmed. The suspension of respondent as sheriff of Baker County is reversed for the reasons stated in Division 2.

*Affirmed in part and reversed in part. Deen, P. J., and Sognier, J., concur.*

DECIDED JULY 16, 1984 —
REHEARING DENIED JULY 30, 1984 —

Peter Zack Geer, for appellant.
J. Brown Moseley, District Attorney, for appellee.