## 41525. In re IRVIN.
(328 SE2d 215)

Gregory, Justice.

In July 1983, four individuals were indicted in Baker County on drug trafficking charges involving 400 pounds of cocaine. On August 5, 1983, these individuals were arraigned. Immediately following arraignment and while all parties were present, the Baker County District Attorney stated he wished to address the court on the issue of the security of the Baker County jail. The District Attorney called petitioner, the Sheriff of Baker County, to testify in this matter. Petitioner testified that, including the four individuals involved in this proceeding, he had seven prisoners secured in four jail cells. He further testified that his staff included two full-time deputies, one part-time deputy, and three jailers. The District Attorney then inquired whether petitioner felt he had "the proper personnel and facilities to properly maintain the security and custody of these defendants." Petitioner responded, "I don't think so at this time because I have seven in jail."

The trial court then orally ordered that two of the prisoners be transferred to the Calhoun County jail; that one prisoner be transferred to the Grady County jail, and that Stephen Earl Brown be transferred to the Decatur County jail.

Each of the prisoners, with the exception of Brown, was transferred accordingly. On August 10, 1983, Brown escaped from the Baker County jail.

On August 12, 1983, the trial court issued a rule nisi, ordering petitioner to appear before the court and show cause why he should not be held in contempt for violating the court's transfer order. The trial court further ordered the District Attorney to investigate and present evidence on this matter. Following a hearing the trial court found petitioner in wilful contempt of the August 5, 1983 transfer order. The trial court imposed a $500 fine, sentenced petitioner to twenty days in jail and suspended petitioner as Sheriff of Baker County "until further order of the Court."

Petitioner appealed to the Court of Appeals, arguing that he could not be held in wilful contempt of the transfer order since under the holding of *Howington v. Wilson*, 213 Ga. 664, 665 (100 SE2d 726) (1957), "the sheriff and not the judge of the court has the authority to transfer a prisoner awaiting trial to a jail in another county. . . ." Relying on *Revel v. State*, 26 Ga. 275 (1858), and *Whiddon v. State*, 160 Ga. App. 777 (287 SE2d 114) (1982), the Court of Appeals determined that the trial court had the authority under these circumstances to transfer the prisoners, and affirmed the trial court's finding that petitioner was in wilful contempt of the trial court's transfer order. However, the Court of Appeals reversed that portion of the trial

court's order indefinitely suspending petitioner as sheriff. See *In re Irvin,*, 171 Ga. App. 794 (321 SE2d 119) (1984).

We granted certiorari in this case to determine (1) whether the Court of Appeals erred in holding that *Howington v. Wilson*, 213 Ga., supra, must yield to *Revel v. State*, 26 Ga., supra; and (2) whether the Court of Appeals erred in affirming the trial court's finding of wilful contempt.

1. In *Revel v. State*, 26 Ga., supra, following the defendant's conviction for murder the Crawford County Superior Court entered an order transferring him to the jail of another county "for safekeeping." It is not clear from the opinion whether an issue of the safety or security of the jail was presented to the trial court, or whether the court entered the order sua sponte. The defendant was transferred, and thereafter the Crawford County jail was destroyed by fire. On appeal defendant argued the trial court erred in ordering the transfer. This court held that "[i]f the jail of the county, where a conviction is had in a criminal case, is insecure, it is competent for the Court to order the prisoner to be committed to the jail of another county for safekeeping." 26 Ga. at 276.

In *Howington v. Wilson*, 213 Ga., supra, the Jackson Superior Court ordered, sua sponte, the transfer of a prisoner prior to trial because his presence in the Jackson County jail would " 'tax the jail facilities of [that] county . . . needed for the handling of other prisoners.' " 213 Ga. at 664. This court, after acknowledging the statutory administrative authority vested in the sheriff to transfer prisoners when the jail of his county is not safe, OCGA § 42-4-4 (a) (3), held "the sheriff and not the judge of the court has the authority to transfer a prisoner awaiting trial to a jail in another county, and then, only when the jail in the county where the prisoner is confined is 'in an unsafe condition.' " Id.

In *Whiddon v. State*, 160 Ga. App., supra, a convicted prisoner challenged a sua sponte order by the trial court, transferring her to another jail pending the outcome of her appeal. The Court of Appeals recognized the sheriff's authority under OCGA § 42-4-4 (a) (3), supra, to transfer a prisoner when the county jail is not safe, and the corresponding lack of statutory authority in the trial court to order, sua sponte, a transfer under similar circumstances.[1] The Court of Appeals

---

[1] The Court of Appeals correctly acknowledged the limited statutory authority vested in the trial court to temporarily transfer a prisoner who has been convicted of a crime, "but who will likely be involved in lengthy or longterm appeals and thus forced to spend considerable time in jails or lockups which are not equipped to handle long-term inmates." OCGA § 42-5-54. This authority may be exercised by the trial court, without notice to the prisoner or hearing evidence, where the trial court certifies in writing that the prisoner has been convicted of the offense of murder, rape, kidnapping or armed robbery and constitutes a dangerous condition which the local jail is not equipped to control. OCGA § 42-5-55 (b); *Ricketts v.*

further acknowledged what appeared to be a conflict between *Revel* and *Howington,* but concluded that *Revel* must control as it had not been overruled or reversed. Therefore, the Court of Appeals held the trial court had the right to, sua sponte, transfer a convicted prisoner to another jail if it found the local jail was not secure. The parties in *Whiddon* did not apply for certiorari to this court.

In finding it had the authority to order the transfer in the case before us, the trial court relied on the analysis of the Court of Appeals in *Whiddon v. State,* supra. As stated above, the Court of Appeals upheld the transfer order in this case based on the holdings of *Revel* and *Whiddon.*

It is clear that the legislature has vested broad authority in the office of sheriff to administer the jails. See generally OCGA Title 42, Chapter 4. It is "the duty of one sheriff . . . to take from the outgoing sheriff custody of the jail and the bodies of such persons as are confined therein. . . ." OCGA § 42-4-4 (a) (1). A sheriff is authorized to determine if the jail of his county is "in an unsafe condition," and if he so determines, to transfer prisoners to the jail of another county. OCGA § 42-4-4 (a) (3). It is beyond dispute that the sheriff, and not the superior court, is charged with administering the jail. But where an issue is properly raised before the trial court regarding jail security or other matters involving administration of the jail, and evidence presented on the issue, the court is empowered to make a judicial determination. If that judicial determination is that the jail is not secure, the trial court is authorized to order the sheriff to transfer a prisoner to the nearest county having a secure jail.

*Howington v. Wilson,* supra, reached the correct result. A trial court may not, on its own motion, transfer a prisoner to another jail where the court, without the issue being raised, concludes the local jail is not secure. The legislature has vested the sheriff alone with the the administrative authority to order such transfers. OCGA § 42-4-4 (a) (3).

In this case, however, the District Attorney brought the issue of the security of the Baker County jail before the trial court. All interested parties were present and participated in the hearing. Petitioner in his capacity as Sheriff of Baker County testified he did not believe the jail to be secure because it was overcrowded. Under these circumstances, the trial court was authorized to order petitioner to transfer

---

*Brantly,* 239 Ga. 151 (236 SE2d 51) (1977). The authority of OCGA § 42-5-54 may also be exercised by the trial court, sua sponte, if the trial court certifies in writing that the continued custody of a person whose testimony or actions contributed to the conviction of another person held in the same jail presents a dangerous situation which the local jail is not equipped to control. OCGA § 42-5-55 (c). In all other circumstances the trial court may not exercise the authority of OCGA § 42-5-54 unless the prisoner or his attorney requests the transfer.

the prisoners,[2] and it was the sheriff's duty to carry out that order. OCGA § 15-16-10. To the extent that *Whiddon v. State,* supra, holds that the trial court has the authority to order, sua sponte, the transfer of a prisoner where the court determines the local jail is not secure, it is overruled. Operation of the jail is not an administrative function of the trial judge except in very narrowly defined situations. See footnote 1, supra.

2. We are now faced with the question of whether the Court of Appeals erred in affirming the petitioner's conviction of criminal contempt.

Following his apprehension by the GBI in July 1983, Stephen Earl Brown was temporarily transferred from the Baker County jail to the Grady County jail "for security and investigative purposes." At that time he was hospitalized in Grady County due to a possible heart problem. The Sheriff of Grady County testified that Dr. Andrew Dekle, Brown's attending physician, informed him that Brown was "faking" and instructed him not to bring Brown back to the hospital. At the contempt proceeding Dr. Dekle denied saying he believed Brown was "faking," but admitted saying Brown's condition was not serious. There is no indication in the record that petitioner was aware of this conversation. Brown was thereafter transferred to Baker County and arraigned on August 5, 1983. As stated in Division 1, the trial court orally ordered that Brown be transferred to the Decatur County jail. After the trial court ruled, Brown's attorney requested that Brown be permitted to remain in Baker County because of

---

[2] Other cases which are relied on by petitioner are factually distinguishable from the case before us.

In *Potts v. State,* 236 Ga. 230 (223 SE2d 120) (1976), the defendant was incarcerated in the Cobb County jail under indictment for kidnapping and armed robbery. His attorney filed a motion in Cobb Superior Court to have him transferred to Forsyth County to be tried on murder charges. The trial court granted the motion to transfer and the Cobb District Attorney appealed. The Court of Appeals dismissed the appeal. This court granted certiorari and held the trial court was not authorized to relinquish jurisdiction over the defendant where the district attorney objected to the transfer prior to disposition of the indictments against him in Cobb County, and where the authorities in Forsyth County made no claim that they first acquired jurisdiction for trial of the charges pending against the defendant there.

*Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979), stands for the proposition that law enforcement officers are charged with the responsibility of assuring the safe and secure confinement of prisoners, and is not in conflict with our decision here.

*In re Prisoners Awaiting Transfer,* 236 Ga. 516 (224 SE2d 905) (1976), supports the result reached in this case. There the trial court ordered on its own motion, the Department of Rehabilitation to pick up certain prisoners from the Colquitt County jail who had not been transferred into the state system. The DOR appealed. This court held the trial court lacked authority to perform the duties statutorily imposed on state correctional authorities. This court held that [t]here was no pending action in which the Superior Court of Colquitt County had jurisdiction of the state correctional authorities, and the state authorities were given no notice or hearing. The order is completely void, and the appellants are entitled to have it so declared." 236 Ga. at 517.

health problems. The trial court stated it had taken Brown's "medical problems into consideration . . . [and] of the five counties in this circuit, [Decatur County] would have the better medical facilities available." Following arraignment, as Brown was being escorted to the jail by Deputy Sheriff Sheffield, he stumbled. Once inside his cell Brown stumbled again. Deputy Sheffield testified that Terry Musgrove, an Emergency Medical Technician (EMT), was present in the jail and checked Brown's pulse. Brown complained of chest pains and, on the advice of Musgrove, Deputy Sheffield decided Brown should be transported to an Albany hospital since there was not an available doctor in Baker County.

Virginia Collins, another EMT, drove the ambulance to Albany, accompanied by Terry Musgrove and Deputy Sheffield. Collins testified that approximately 20 minutes before Terry Musgrove called her to the jail to drive Brown to Albany, Musgrove telephoned her to inquire whether she would "be around" that morning since "we possibly will have an ambulance run." Musgrove stated that "one of the prisoners is having some heart problems." Collins further testified that after arriving at the jail she examined Brown but did not believe his condition to be serious. As a precaution, however, he was taken to the hospital.

Once at the Albany Hospital, Dr. James Stone, the Emergency Room physician on duty, examined Brown. Deputy Sheffield and Collins waited in the hallway during the examination. Musgrove remained with Brown and Dr. Stone. After the examination, Dr. Stone told Deputy Sheffield and Collins that "I believe we have a turkey here, gobble-gobble," but said nothing more to them about Brown's condition. On the ambulance ride back to Baker County, Terry Musgrove and Brown told Deputy Sheffield that the doctor instructed that Brown not be moved from Baker County. Deputy Sheffield relayed this information to petitioner, but did not relate the comment Dr. Stone had made about Brown being a "turkey." Petitioner testified he immediately called the Baker County District Attorney because the District Attorney had raised the issue of jail security before the trial court. The District Attorney was not in his office, and petitioner informed an Assistant District Attorney of what he had been told. The Assistant District Attorney testified that he responded, "Well, sounds like that you need to keep him in your jail until Monday [August 8, 1983] and keep a close eye on him, and then move him to Bainbridge on Monday." Neither the trial court nor the District Attorney was ever informed of this conversation until after Brown's escape. Petitioner testified that the Assistant District Attorney promised to relay this information to the trial court and to let him know if this "was not all right." The Assistant District Attorney denied making this statement.

There is no permanent physician in Baker County. A "satellite" physician usually makes rounds at the Baker County Primary Health Care Center on Monday, Wednesday and Friday of each week. On Monday, August 8, petitioner made an appointment for Brown to be seen by the doctor that afternoon. At 4:30 p.m. on August 8 the clinic receptionist cancelled the appointment due to the doctor's heavy caseload and rescheduled it for Wednesday, August 10. In the early morning hours of August 10, two armed gunmen forced the release of Brown from the Baker County jail.

Dr. Dekle, the physician who, weeks earlier, had attended Brown in the Grady County jail testified that on August 9, Brown's attorney requested that he write a letter to the trial judge in this case, recommending that Brown not be transferred from the Baker county jail. The letter was written and given to Brown's attorney who delivered it to the sheriff's office that same day. Neither petitioner nor the trial judge received the letter until after Brown's escape.

One of the jailers at the Baker County jail testified that he routinely let Brown out of his cell to perform "quite a few push-ups and sit-ups" in a locked hallway. The jailer testified this practice continued even after Brown's emergency trip to the hospital in Albany, but that the petitioner was unaware of this.

At the time of the contempt hearing before the trial court, the standard of evidence required to establish criminal contempt was a preponderance of the evidence. *Pedigo v. Celanese Corp. of America*, 205 Ga. 392 (54 SE2d 252) (1949). Subsequent to petitioner's conviction of criminal contempt, this court altered that standard. In *In re Crane*, 253 Ga. 667, 670 (324 SE2d 443) (1985) this court held "that the standard of proof in criminal-contempt cases is the beyond-reasonable-doubt standard." See *Garland v. State*, 253 Ga. 789 (325 SE2d 131) (1985). We now hold that on appeal of a criminal contempt conviction the appropriate standard of appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979); see also *Blackburn v. Blackburn*, 249 Ga. 689, 693-4 (292 SE2d 821) (1982). Therefore, the Court of Appeals erred in holding that the standard of appellate review is whether the trial court abused its discretion in finding petitioner guilty of criminal contempt. 171 Ga. App. at 797-8.

The issue in this case, therefore, is whether *any* rational trier of fact could find beyond a reasonable doubt that petitioner wilfully violated the transfer order of the trial court. Our examination of the evidence leads us to conclude that a rational factfinder could find either that the evidence established beyond a reasonable doubt that petitioner wilfully violated the transfer order, or that it did not, depend-

ing on how that factfinder views the evidence. Because the trial court did not have the benefit of the evidentiary standard announced in *Garland v. State*, supra, when it decided this case, we remand the case to the trial court for application of that standard.

*The judgment of the Court of Appeals is affirmed in part and reversed in part. The case is remanded to the trial court for further disposition not inconsistent with this opinion. All the Justices concur.*

HILL, Chief Justice, concurring.

I concur in the judgment. My purpose in voting to grant certiorari in this case was to point out that the old rule (decisions of this court in conflict with older unanimous full bench decisions must yield to the older decisions) is not only old; it is no longer the rule. *Hall v. Hopper,* 234 Ga. 625 (3) (216 SE2d 839) (1975).

The law changes from time to time. When it changes, the more recent decisions of this court express the rules to be applied. Therefore, older decisions yield to the more recent ones. The majority acknowledges this proposition when it overrules *Whiddon v. State,* 160 Ga. App. 777 (287 SE2d 114) (1982), which relied upon *Revel v. State,* 26 Ga. 275 (1858).

DECIDED APRIL 4, 1985.

*Geer & Rentz, Peter Zack Geer,* for appellant.
*J. Brown Moseley, District Attorney,* for appellee.
*Michael J. Bowers, Attorney General, George P. Shingler, Assistant Attorney General,* amicus curiae.