A93A0021. IN RE WILLIAM E. SMITH, SHERIFF.
(439 SE2d 725)

SMITH, Judge.

William E. Smith, the Sheriff of Camden County, appeals from an order of the Camden County Superior Court holding him in contempt for his failure to produce a document pursuant to court order.

The order in issue was entered in the criminal case of one Bobby Graham, then an inmate at the Camden County jail. Graham, a trusty, was involved in an automobile accident on June 15, 1991, while driving a car he had been washing at the jail. Following this incident, concerns were raised that Graham may have been intoxicated at the time of the accident; that Sheriff Smith sometimes arranged for Graham to perform work outside the jail for pay; that earlier on the day of the accident, Smith had personally taken Graham to wax floors at a private home on Jekyll Island, where Graham had consumed alcoholic beverages; and that on the ride back to the jail

from Jekyll Island, Smith had allowed Graham to purchase beer with his pay. When these concerns arose, Smith sought the advice of private counsel. Thereafter, when Graham was ordered transferred to another jail without a stated reason, Smith became concerned about protecting himself from possible liability in any civil action that might arise regarding the accident. He again conferred with counsel, who advised him to obtain a statement from Graham regarding what had occurred on the day of the accident. Such a statement was taken on July 31, 1991 by sheriff's deputies. However, the statement was not placed in Graham's official file. It was kept by Smith in his van, and a copy was sent to Smith's counsel in Atlanta, at his request.

The sheriff was found in contempt of an order that was signed by a superior court judge on February 21, 1992. That order required the sheriff's office to turn over to the Georgia Bureau of Investigation (GBI) all statements of witnesses in the possession of any sheriff's office personnel, as well as any written or oral statements made by Graham while in custody at the Camden County jail and in the possession of any employee of the sheriff's office, including the sheriff. The order was delivered by agents of the GBI to the sheriff's office. Because the sheriff was out when GBI agents arrived to serve the order, it was handed to a deputy sheriff, who arranged for Graham's file to be copied and turned over. Graham's statement in issue, however, was not in the file and was not turned over to the GBI. GBI agents learned that such a statement existed, but they were unable to locate the statement even after executing, in March 1992, a search warrant obtained in the course of an investigation into the use of inmate labor.

A citation for contempt was drafted and signed on April 9, 1992, and filed with the court on May 19, 1992. It is unclear exactly when Graham's statement was turned over to the State, but at some time in May 1992, when Smith learned that the citation for contempt had been filed or would be filed, he mailed the original statement to his counsel in Atlanta, who delivered it to the attorney general's office. The superior court judges in the Brunswick Judicial Circuit recused themselves, and the hearing on the contempt citation was held on June 19, 1992, before a superior court judge from another judicial circuit. The order was filed on that day, shortly before the hearing. The trial court found Smith in indirect criminal contempt of the Camden County Superior Court, and ordered him to pay a $500 fine.

1. The first question is whether Smith can be held in contempt of an order which was not filed until after he had complied with its terms. We find this order was enforceable despite not having been filed.

OCGA § 15-1-4 (a) (3) provides that a court has the power "to issue attachments and inflict summary punishment for contempt of

court [in] cases of . . . [d]isobedience or resistance by any officer of the courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree, or command of the courts." OCGA § 9-11-58 (b) provides that filing with the clerk constitutes entry of a judgment, and unless the court otherwise directs, a judgment is not effective "for any purpose" until this is done. The scope of OCGA § 9-11-58 (b) appears to have been extended by implication beyond "judgments" to include orders of any kind. See, e.g., *Bloodworth v. Thompson*, 230 Ga. 628 (198 SE2d 293) (1973) (order dissolving injunction of foreclosure sale ineffective because signed but not filed with clerk); *Milam v. Mojonnier Bros. Co.*, 135 Ga. App. 208 (217 SE2d 355) (1975) (order signed by judge but not filed with clerk insufficient to stop dismissal under five-year rule because it never became an order of the court). See generally 56 AmJur Motions, Rules, and Orders, § 38 (general rule is that orders are not complete until entered). Ordinarily, then, only orders that have been "entered," i.e., filed, may be enforced pursuant to OCGA § 15-1-4 (a) (3): "what the judge orally declares is no judgment until the same has been reduced to writing and entered as such. [Cits.]" *Tyree v. Jackson*, 226 Ga. 690, 694 (2) (177 SE2d 160) (1970).

However, sheriffs are officers of the court. *Lynd v. State*, 262 Ga. 58, 64 (10) (414 SE2d 5) (1992). The contempt power of the courts is broader in cases of "[m]isbehavior of any of the officers of the courts in their official transactions" pursuant to subsection (a) (2) of OCGA § 15-1-4:

If OCGA § 15-1-4 (a) (2) is construed to apply only to the disobedience by an officer of the court to a written order, this provision of our Code is rendered meaningless; it would be entirely duplicitous of the provisions of OCGA § 15-1-4 (a) (3) and therefore redundant. OCGA § 15-1-4 (a) (2) is intended to impose upon officers of the courts engaged in their official transactions a higher duty to the court than is demanded of the broader group of individuals listed in OCGA § 15-1-4 (a) (3) who are arguably subject to the contempt powers only for failure to comply with those commands of the court spread upon the record in written form. Surely the interrelationship between the court and its officers is of such a complex and on-going nature as to render impractical any requirement that the court must render into a writing spread upon the record of the court any direction to an officer as a prerequisite to compelling obedience to its commands. *In re Irvin*, 171 Ga. App. 794, 796 (1) (321 SE2d 119) (1984), modified on other grounds 254 Ga. 251 (328 SE2d 215) (1985).

Although it certainly would have been preferable for the order to have been filed immediately, it cannot reasonably be maintained, as urged by Smith, that the order is for that reason unenforceable. If the court's contempt power under OCGA § 15-1-4 (a) (2) extends to an

oral order such as that held enforceable in *Irvin*, it necessarily also extends to an order such as the one in this case which, although not filed, was reduced to writing and delivered into the hands of sworn deputies of the officer of the court for service on the sheriff.

2. Any defense involving the insufficiency of service of process on Smith was clearly waived when Smith failed to raise this issue "at the time of pleading." OCGA § 9-11-12 (b) and (h) (1) (B).

3. We find no merit in Smith's contention that he could not be held in contempt of this order because it directed the sheriff's office to release the evidence sought and did not require him, personally and individually, to take action. In support of his contention, Smith cites *Spallone v. United States*, 493 U. S. 265 (110 SC 625, 107 LE2d 644) (1990), which held that members of a city council could not be held in contempt for their failure to comply with an order to take legislative action to remedy past discrimination. However, *Spallone* involved civil contempt, not criminal, and the compelling rationale for the holding rests on the court's refusal to condone the imposition of sanctions designed to influence the council members to vote a certain way in order to avoid fines. Id. at 279-280. Moreover, the order in this case clearly directed the release of any and all statements of Graham "in the possession of any employee of the Camden County Sheriff's Office including the Sheriff of Camden County."

4. Smith maintains the evidence was insufficient to support his conviction in two respects: the State did not prove either that he had actual notice of the contents of the order or that his conduct was wilful. In reviewing the sufficiency of the evidence to support a criminal contempt conviction, the proper standard is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *In re Smith*, 205 Ga. App. 857, 858 (424 SE2d 45) (1992).

(a) "The contemptuous violation of a court's order may be punished though the party charged with such violation was not a party to the proceedings. In such a case it must be alleged and proved that the contemnor had actual notice of the order for disobedience of which he is sought to be punished. [Cits.]" *Spence v. The Woodman Co.,* 213 Ga. 573, 576 (3) (100 SE2d 435) (1957). Although Smith concedes he knew of the existence of the order, he argues that he did not read it until served with the contempt citation and had no knowledge of its actual contents; he believed that the order required only the "official file" of Graham to be turned over, which had been done. He testified that Graham's statement had been taken for the purpose of protecting Smith and the sheriff's office from any potential civil liability resulting from Graham's auto accident. Because of this and because it did not relate to the criminal charges pending against Graham, the

statement was not placed in Graham's file. Smith therefore did not believe he was required, under the terms of the order, to turn the statement over to the GBI.

However, Clyde Urquhart, the public defender who represented Graham, testified that he had engaged in several conversations with the sheriff regarding Graham's statement. In a conversation that took place sometime in late February or early March 1992, Smith told him "he had received a court order to turn over [Graham's statement] and that he did not intend on doing that." Smith disputed Urquhart's version of the conversation. This created a fact issue, and the trial court, acting as the finder of fact, was obligated to resolve the conflict by believing either Urquhart or Smith. It is apparent the trial court resolved this fact issue against Smith. See *In re Irvin*, supra, 171 Ga. App. at 799. Viewing the evidence in the light most favorable to the prosecution, Urquhart's testimony was sufficient to support a finding that Smith knew the order required him to release Graham's statement to the GBI.

(b) Smith contends that even if we find he had actual notice of the contents of the order, the evidence does not support a finding that he wilfully violated its terms. This contention is premised mainly on Smith's testimony that he never hid the fact that the statement had been taken and was in his possession, as well as on newspaper articles showing that he publicly discussed his possession of it. He argues that if he had desired to commit a wilful violation of the court order by withholding the statement, he would not have announced its existence or his possession of it to the world. This argument may be correct as a general description of human conduct, but in this context, it is no more than another restatement of Smith's argument that he simply mistakenly believed that the order did not encompass the statement.

We find the evidence sufficient to support a finding of wilfulness. First, we agree with the trial court that any argument that a statement taken from an inmate while in custody and after being advised of rights may be "private," and not a part of the inmate's file, is insupportable and cannot be condoned. Second, given that the order was issued in the criminal case of an inmate in Smith's official custody, and that Smith's concern about the incident involving Graham was great enough to have caused him to consult with private counsel more than once and to take Graham's statement, his failure to read the actual terms of the order must be viewed as more than simple oversight. The parties have cited us to no Georgia authority on point, and we have found none. However, both parties have cited *Perfect Fit Indus. v. Acme Quilting Co.*, 646 F2d 800 (2nd Cir. 1981) in support of their respective arguments. Although we are not bound by it, we are persuaded by the wisdom of its words. A contemnor "is not per-

mitted to maintain a studied ignorance of the terms of a decree in order to postpone compliance and preclude a finding of contempt." Id. at 808 (III). In *Perfect Fit*, these words were directed to a party to the action, but we find them equally apt here. Smith is an officer of the court undeniably connected to the action, an officer who has conceded he was well aware of the existence of the order. The evidence was sufficient to find Smith guilty of contempt beyond a reasonable doubt.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DENIED DECEMBER 20, 1993 — ■

*Jones, Brennan & Eastwood, Taylor W. Jones, Rebecca A. Copeland, Garland, Samuel & Loeb, Donald F. Samuel*, for appellant.

*Michael J. Bowers, Attorney General, Michael E. Hobbs, Deputy Attorney General, Patrick D. Deering, Assistant Attorney General, John E. Hennelly, Staff Attorney*, for appellee.