## 69798. THE STATE v. HOLTON.
### (326 SE2d 235)

POPE, Judge.

On November 27, 1983 Ron Robin Holton was observed driving on I-285 northbound by a DeKalb County police officer. Holton was traveling at a high rate of speed and was weaving through traffic without using signals. Upon stopping the vehicle, the officer observed Holton's eyes to be dilated and glassy. The officer also smelled alcoholic beverage upon Holton's breath. Holton was placed under arrest and read the Georgia implied consent warning at the scene. He then stated to the officer that he had had "a couple of beers at the game." He was transported to the DeKalb County Police Department where he was again advised of the implied consent warning. He agreed to take a breath test which was administered by a certified operator of intoximeter machines. The test was performed on an Intoximeter 3000 using methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation. The result of the breath test was a blood alcohol level of .12 grams percent.

The State brings this appeal from the trial court's grant of Holton's motion in limine. Said order ruled inadmissible the results of the foregoing state-administered breath test. The trial court based its ruling upon the failure of the GBI's Division of Forensic Sciences to comply with the Georgia Administrative Procedure Act (APA) by promulgating rules and regulations concerning chemical testing for alcohol in blood. Under OCGA § 40-6-392 (a) (1) the Division of Forensic Sciences is directed to approve methods for the chemical analysis of a person's breath or other bodily substances and to approve techniques or methods to ascertain the qualifications and competence of individuals to conduct such analyses and to issue permits to those individuals. Under this Code section, rules and regulations have been filed pursuant to the APA by the Department of Public Safety (see Rules of the Department of Public Safety, Ch. 570-9), an agency of state government separate and distinct from the GBI and which has no statutory authority over the Division of Forensic Sciences (DFS).

1. The State enumerates as error the trial court's application of the APA to this case. The State first argues that the APA does not

apply to OCGA § 40-6-392. Subsection (a) (1) of that Code section provides: "Chemical analysis of the person's blood, urine, breath, or other bodily substance, to be considered valid under this Code section, shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose. The Division of Forensic Sciences of the Georgia Bureau of Investigation is authorized to approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits, which shall be subject to termination or revocation at the discretion of the Division of Forensic Sciences." The State contends that if the legislature had intended for the DFS to comply with the APA, the statute would have specifically directed DFS to do so. We find this analysis unpersuasive. An "agency" covered by the APA is defined as meaning "each state board, bureau, commission, department, activity, or officer authorized by law expressly to make rules and regulations. . . ." OCGA § 50-13-2 (1). The Georgia Bureau of Investigation is a state agency (OCGA § 35-3-2), and the DFS is a division of that agency (OCGA § 35-3-3); neither is specifically excluded from compliance with the APA. See OCGA § 50-13-2 (1). Compare *Aldridge v. Ga. Hospitality &c. Assn.*, 251 Ga. 234 (2) (304 SE2d 708) (1983). See also *Dept. of Human Resources v. Williams*, 130 Ga. App. 149 (1) (202 SE2d 504) (1973). See generally *Wong Yang Sung v. McGrath*, 339 U. S. 33 (70 SC 445, 94 LE 616) (1950). A "rule" covered by the APA is defined as "each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy . . . ." OCGA § 50-13-2 (6). Since OCGA § 40-6-392 (a) (1) clearly authorizes DFS to approve methods for the chemical analysis of a person's bodily substances, it follows that such approval sets a standard which implements the statute. Accordingly, we find that the procedural requirements of the APA are applicable to actions taken by DFS in implementing the mandate of OCGA § 40-6-392 (a) (1).

The State also contends that, even if DFS is governed by the APA, implementation of OCGA § 40-6-392 (a) (1) concerns only the internal management of DFS and does not affect private rights or procedures available to the public; thus, such implementation is exempted from coverage by the APA pursuant to OCGA § 50-13-2 (6) (A). In light of OCGA § 40-5-55 (a), which directs that "any person who operates a motor vehicle upon the highways of this state shall be deemed to have given consent, *subject to Code Section 40-6-392*, to a chemical test or tests of his . . . bodily substances," we find this contention wholly lacking in merit. (Emphasis supplied.)

2. Having determined the applicability of the APA, we turn to

the State's remaining contention, to wit: the promulgation of the implied consent rules by the Department of Public Safety is in substantial compliance with pertinent statutory requirements. We begin our analysis of this issue with an overview of the statutory histories of the Department of Public Safety and the implied consent law as presently codified at OCGA § 40-6-392 (a) (1). The General Assembly created the Department of Public Safety in 1937. Ga. L. 1937, p. 322. The Department was given authority over the Georgia State Patrol, the licensing of drivers, and the Division of Criminal Identification, Detection, Prevention and Investigation. The duties of the latter division included, inter alia, "to provide for the scientific investigation of articles used in committing crimes," and "to provide for the testing and identification of weapons and projectiles fired therefrom." Id. at 340. The Department was also charged with providing such rules and regulations as were necessary for this division. Id. at Art. I, § 2. In 1941 this division became known as the Bureau of Investigation. Ga. L. 1941, p. 277, § 3. As early as 1953 the Director of Public Safety was authorized to designate one or more physicians in each county of the state to conduct blood tests on persons who had been arrested for driving under the influence of intoxicating liquor to determine the amount or weight of alcohol in said persons' blood. Ga. L. 1953, Nov.-Dec. Sess., p. 556, Art. V. In 1968 the State Crime Laboratory, apparently by this time a recognizable division of the Department of Public Safety, was assigned the task of approving methods of chemical analysis of the blood or breath of a person arrested for D.U.I. and qualifying individuals to perform such tests. Ga. L. 1968, p. 448, § 1. This 1968 statute as amended through the years is the implied consent law in effect today, OCGA § 40-6-392.

The Executive Reorganization Act of 1972 changed the structure of the executive branch of state government and divided the functions[1] of the Department of Public Safety. A Board of Public Safety was created to "establish the general policy to be followed by the Department of Public Safety." Ga. L. 1972, pp. 1015, 1028. The Department of Public Safety, a separate entity from the Board of Public Safety, was also created with its own commissioner. Id. at §§ 1601 and 1602. The Department retained all of its assigned functions save the policy-making functions which were transferred to the Board. Id. at §§ 1603 and 1609. The Reorganization Act further created a Division of Investigation within the Department to which the functions of the Bureau of Investigation were transferred. Id. at §§ 1608 and 1608.1.

---

[1] A "function" is defined by the Reorganization Act as "a duty, power, or program exercised by or assigned to an agency." Ga. L. 1972, pp. 1015, 1018. This term is distinguished from "policy-making" which means "those functions related to establishing the general direction which programs of an agency shall take." Id. at 1019.

Also transferred to the Division of Investigation were the functions of the State Crime Laboratory referred to in the Georgia Post Mortem Examination Act. Id. at § 1608.2. We pause to note that in light of the language used here, it does not appear that the General Assembly intended to transfer the State Crime Laboratory's functions under the implied consent law to the newly created Division of Investigation.

In 1974 the Reorganization Act was amended by removing the Division of Investigation from the Department of Public Safety and making it a separate agency and department of state government known as the Georgia Bureau of Investigation. Ga. L. 1974, p. 109, § 2. Except for the policy-making functions retained by the Board of Public Safety, all functions of the Division of Investigation as set forth in the 1972 Act were transferred to the GBI. Id. Additionally, the 1974 amendment provided: "Unless inconsistent with this Act, any reference in Georgia laws to the State Crime Laboratory . . . means the Georgia Bureau of Investigation created by this Act." Id. at 111. In 1980 the Reorganization Act was again amended by providing that the State Crime Laboratory be known as the Division of Forensic Sciences, one of the divisions which comprise the GBI. Ga. L. 1980, p. 497, § 1. This 1980 amendment further provided that all functions assigned to the State Crime Laboratory by the Georgia Post Mortem Examination Act and *"any other functions* of said State Crime Laboratory except policy-making functions transferred to the Board of Public Safety . . ." were transferred to the GBI and were to be carried out by DFS. (Emphasis supplied.) Id. Finally, the 1980 amendment also provided that "any reference in Georgia laws to the State Crime Laboratory means the Division of Forensic Sciences within the Georgia Bureau of Investigation." Id. at 498. In 1983 the implied consent law, OCGA § 40-6-392, was amended to reflect, inter alia, the above-cited change in name. Ga. L. 1983, p. 1000, § 14.

Our view of the foregoing enactments is that the functions assigned to the State Crime Laboratory under the implied consent law were not transferred to the GBI until the 1980 amendment to the Reorganization Act. The Reorganization Act provides: "The department which succeeds to all or part of the functions of an agency under this Act other than an agency assigned to the department for administrative purposes, also succeeds to the rules, regulations, and orders of that agency and the power of that agency to make rules and regulations relating to the functions or parts of functions transferred. The rules, regulations, and orders of an agency in effect before the effective date of the provisions of this Act affecting the agency remain in effect until amended, repealed, superseded or nullified by proper authority or as otherwise provided by law." Ga. L. 1972, pp. 1015, 1032. Thus, the rules of the State Crime Laboratory issued pursuant to the implied consent law and promulgated by the Department of

Public Safety became the rules of the Division of Forensic Sciences of the GBI by operation of law in 1980. Although several amendments to these rules have been made since 1980, the rules continue to be filed under the auspices of the Department of Public Safety. We are offered no explanation as to why these "Department of Public Safety" rules have not been superseded by similar rules promulgated by the GBI. Holton argues that under these circumstances, if an individual is arrested for driving under the influence of alcohol and goes to the Code section governing the admissibility of his blood alcohol test, OCGA § 40-6-392 (a) (1), he will read that the GBI, through its Division of Forensic Sciences, is charged with approving methods of testing and certifying individuals to conduct those tests. The Secretary of State will not have these implied consent rules indexed under the GBI, as intended by the APA. Thus, he concludes, such an individual is without an opportunity to verify DFS's compliance with the statute.

In general, rules issued by a state agency in the absence of clear legislative authority are of no force and effect. See *Pope v. Cokinos*, 231 Ga. 79 (1) (200 SE2d 275) (1973); Op. Att'y Gen. 71-158. See also *Todd v. State*, 205 Ga. 363 (1) (53 SE2d 906) (1949). Nonetheless, "[a] substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law." OCGA § 1-3-1 (c). See, e.g., *Hart v. Columbus*, 125 Ga. App. 625 (2) (188 SE2d 422) (1972). As can be seen from the foregoing history, the implied consent rules, although originally promulgated by the Department of Public Safety, became the rules of the GBI's Division of Forensic Sciences in 1980. The evidence of record conclusively establishes that the amendments to the implied consent rules since 1980, although issued under the auspices of the Department of Public Safety, were in fact formulated by DFS pursuant to the mandate of OCGA § 40-6-392 (a) (1). Further, there is no assertion by Holton that the Department of Public Safety did not follow the procedural directives of the APA in promulgating these amendments to the implied consent rules; rather, as Holton correctly points out, the Department of Public Safety is simply no longer the agency charged by OCGA § 40-6-392 (a) (1) with implementing such rules. Thus, the only element of statutory noncompliance in this case is the fact that the current implied consent rules are published by the wrong agency, the Department of Public Safety instead of the GBI.

We are of the opinion that, while the failure of DFS to properly promulgate the implied consent rules under the auspices of the GBI may conceivably cause or have caused some difficulty or confusion, the publication of these rules by the Department of Public Safety has,

as a practical matter, not resulted in any appreciable lack of notice of these rules to those affected thereby. Clearly, Holton asserts no such lack of notice. We base our opinion in part upon the Department of Public Safety's long history of responsibility for implementing the implied consent law, only recently assigned to the GBI. Moreover, the multitude of cases which have appeared before the appellate courts of this state since 1980 dealing with the implied consent law and the subject rules published by the Department of Public Safety disclose no apparent lack of notice of these rules. See, e.g., *State v. Johnston*, 249 Ga. 413 (3) (291 SE2d 543) (1982); *State v. Strickman*, 173 Ga. App. 1 (2) (325 SE2d 775) (1984); *Channell v. State*, 172 Ga. App. 156 (322 SE2d 356) (1984); *Higginbotham v. State*, 170 Ga. App. 80 (316 SE2d 181) (1984); *Stewart v. State*, 165 Ga. App. 62 (2) (299 SE2d 134) (1983); *State v. Chumley*, 164 Ga. App. 828 (5) (299 SE2d 564) (1982). Thus, although we do not approve of the subject state agencies' failure to *fully* comply with the pertinent statutory requirements as set forth in this opinion, we conclude that the implied consent rules have been promulgated in substantial compliance with said requirements and, thus, are valid and effective against Holton. See also *Cheely v. State of Ga.*, 251 Ga. 685 (1) (309 SE2d 128) (1983). We nevertheless encourage the GBI through its Division of Forensic Sciences to proceed with all deliberate speed to promulgate, and update, the implied consent rules in *full* compliance with the various statutes cited herein.

*Judgment reversed. Banke, P. J., and Benham, J., concur.*

DECIDED DECEMBER 20, 1984 —
REHEARING DENIED JANUARY 4, 1985 —

*Ralph Bowden, Solicitor, Linda S. Finley, Assistant Solicitor,* for appellant.

*James S. Plackis, William M. Davidson,* for appellee.

*Joseph L. Chambers, Elliott A. Shoenthal, Michael J. Bowers, Attorney General, James P. Googe, Jr., Executive Assistant Attorney General, Marion O. Gordon, First Assistant Attorney General, Daryl A. Robinson, Senior Assistant Attorney General, Victoria H. Soto, Assistant Attorney General,* amici curiae.