A89A1383. DEPARTMENT OF EDUCATION v. KITCHENS.
(387 SE2d 579)

SOGNIER, Judge.
Lee Ann Kitchens petitioned the Superior Court of Fulton County for review of the decision of the Board of Education of the State of Georgia (the "Board") upholding a special master's decision denying her certification as a public school teacher. The trial court reversed the ruling because in promulgating the regulations relied upon in the certification decision the Board failed to follow the procedures mandated by the Georgia Administrative Procedure Act, OCGA § 50-13-1 et seq. (the "APA"). The Department of Education ("DOE"), the named defendant, filed this appeal.

1. Appellant first contends the trial court erred by exercising personal jurisdiction over it because the Board, not DOE, is empowered to take the challenged actions.

We agree with appellant that the Board should have been named as a defendant because it is responsible for teacher certification and promulgation of regulations for the certification process. OCGA §§ 20-2-200; 20-2-240. Indeed, appellee concedes the Board should have been named as a defendant, but asserts the designation of DOE as the defendant was a clerical error. However, we find this issue to be one of misjoinder, not jurisdiction, as DOE, the administrative arm of the Board, was a proper, albeit not necessary, party to this suit. See *Guhl v. Tuggle*, 242 Ga. 412-414 (1) (249 SE2d 219) (1978); see also OCGA §§ 9-11-19 (a); 9-11-21. We see no risk of prejudice to the Board by the action taken in its absence because it had notice of the suit and its interests were ably represented by the Attorney General and by DOE, the administrative arm of the Board. Accordingly, there is no basis for dismissal of the action. OCGA § 9-11-21; see *Guhl*, supra at 414. Parties may be added by the court on its own initiative at any stage of the litigation, including appeal, *Guhl*, supra, and thus we direct the trial court to add the Board as a party defendant upon remittitur of this case to the trial court. Id.

2. Appellant maintains the trial court erred by concluding that the regulations pursuant to which appellee was denied a teaching certificate were invalid because appellant had not complied with the APA.

The procedural requirements set forth in OCGA § 50-13-4 for adoption or amendment of "rules," which are the aspect of the APA at issue here, apply to any "agency." The APA defines the term "agency" as "each state board, bureau, commission, department, activity, or officer authorized by law expressly to make rules and regulations or to determine contested cases, *except . . .* any school, college, hospital, or other such educational, eleemosynary, or charitable institution" and other specific exceptions not relevant to the case at bar. (Emphasis supplied.) OCGA § 50-13-2 (1). " 'Rule' means each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy" with certain enumerated exceptions. OCGA § 50-13-2 (6). Appellant maintains that although it is a "department," it is also an "educational institution" and thus exempt from the APA.

"[I]t is the duty of the courts in the construction of statutes to give effect to the intention of the legislature when it is ascertainable [cit.]; and in construing laws . . . proper regard should be given to the old law, the evil, and the remedy. [Cits.]" *Moore v. Baldwin County,* 209 Ga. 541, 545-546 (74 SE2d 449) (1953). The legislative intent of the APA, as reflected in the Senate committee report included in the record sub judice, was to provide for "uniformity in administrative procedure" among state agencies, and in so doing to "equip each agency with the means of attaining statutory purposes and to provide ample safeguards in protecting the public interest." Accordingly, the committee stated that "[e]xclusions from the [APA] should be as few as possible and should not occur except for cause." For additional analysis of the legislative intent to provide uniform state agency procedures through the APA, see 1965-66 Op. Att'y Gen. No. 65-73.

With this legislative intent in view, we turn to analysis of the exclusion in OCGA § 50-13-2 (1) at issue. "Where the language of a statute consists of common, ordinary words, and there is nothing to show that any unusual meaning is to be attached thereto, the court cannot deny the language its ordinary, usual signification; nor is the court required to give the language a forced and strained interpretation. [Cit.]" *Sheffield v. Cotton States &c. Ins. Co.,* 141 Ga. App. 861, 863 (234 SE2d 695) (1977). The American Heritage Dictionary, 2d ed., defines "educational" as "[s]erving to educate; instructive," and as "[o]f or relating to education," with "education" defined as "[t]he act or process of educating or being educated." Id. at 439. "Institution" means, inter alia, "[a]n established organization or foundation, esp[ecially] one dedicated to public service or to culture." Id. at 666.

Black's Law Dictionary, 5th ed., p. 461 defines "educational institution" as "a school, seminary, college, or educational establishment." The term "educational institution" also has been defined by Georgia courts and the legislature in other contexts. In construing a statute concerning testamentary bequests to "any charitable, religious, educational, or civil institution" in *Trustees of Univ. of Ga. v. Denmark*, 141 Ga. 390, 394 (81 SE 238) (1914), overruled on other grounds, *Hood v. First Nat. Bank*, 219 Ga. 283, 286 (133 SE2d 19) (1963), the Supreme Court concluded the University of Georgia was an "educational institution." Id. at 398. OCGA § 48-5-41 (a) (6), which governs property tax exemptions, equates "educational institution" with "college, incorporated academy, or other seminary of learning." See *J.A.T.T. Title Holding Corp. v. Roberts*, 258 Ga. 519-520 (1, 2) (371 SE2d 861) (1988).

Construing the language of OCGA § 50-13-2 (1) as a whole so as to give effect to the legislative intent of the entire statute, *Board of Trustees v. Christy*, 246 Ga. 553, 554 (1) (272 SE2d 288) (1980), we find that the exclusion of "any school, college, hospital, or other such educational, eleemosynary, or charitable institution" was intended to apply only to those institutions which provide educational or charitable services directly, and not to the administrative bodies through which they are regulated. Given the legislature's intent to provide uniformity in administrative procedure of state boards and departments and to limit the number of exemptions from the APA, we view this provision as exempting primary service providers, but we cannot agree with appellant that the exclusion should be read to include the administrative bodies which regulate such institutions, as those agencies are precisely the entities the APA was intended to cover. Further, all other boards or departments exempt from the APA are specifically named in OCGA § 50-13-2 (1).

This construction of the statute is consistent with the principle of *ejusdem generis*, which has long been recognized by the courts of this state. " 'Where a statute or other document enumerates several classes of persons or things, and immediately following and classed with such enumeration the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that persons or things therein comprised may be read as *ejusdem generis* with, and not of a quality superior to or different from those specifically enumerated.' [Cit.] . . . [Cit.] . . . 'The general word which follows particular and specific words of the same nature as itself takes its meaning from them, and is presumed to be restricted to the same genus as those words; or, in other words, as comprehending only things of the same kind as those designated by them; unless, of course, there be something to show that a wider sense was intended.' " *Standard Oil Co. v. Swanson*, 121 Ga. 412, 415 (49 SE 262)

(1904). This rule, which is applicable to the instant case, compels the conclusion that the general term "educational institution" following the specific terms "school" and "college" must refer to other institutions like schools and colleges — e.g., universities, academies, trade schools — and not to administrative agencies which regulate those institutions.

We note that we are not called upon to decide upon the validity of the Quality Basic Education Act, OCGA § 20-2-130 et seq., nor do we intimate any such opinion. We hold only that as the Board and DOE are included within the APA definition of "agency" and are not included within the list of exclusions, both entities are subject to the APA. See generally *Dept. of Human Resources v. Williams*, 130 Ga. App. 149, 150-151 (1) (202 SE2d 504) (1973). As the regulations at issue here are encompassed within the APA definition of "rules," see OCGA § 50-13-2 (6), and appellant concedes the APA procedural requirements for rule promulgation were not followed, said regulations are invalid and cannot be enforced against appellee. See OCGA §§ 50-13-3 (b); 50-13-4 (d).

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED OCTOBER 4, 1989 —
REHEARING DENIED OCTOBER 18, 1989 — 

*Michael J. Bowers, Attorney General, H. Perry Michael, Executive Assistant Attorney General, William B. Hill, Jr., Deputy Attorney General, Patricia T. Barmeyer, Senior Assistant Attorney General, Richard S. Thompson, Assistant Attorney General,* for appellant.

*Bensonetta T. Lane,* for appellee.