A97A2359, A98A0276. HELMECI v. THE STATE (two cases).

(498 SE2d 326)

BLACKBURN, Judge.

On May 2, 1995, a loaded dump truck driven by Dean Scott Helmeci collided with a passenger car on a Cherokee County road, killing the car's driver. Criminal charges stemming from the incident resulted in Helmeci's convictions for second degree vehicular homicide, driving with a controlled substance in his urine, reckless driving, driving an unsafe and improperly equipped vehicle, and possession of amphetamine and methamphetamine. In Case No. A97A2359, Helmeci appeals those convictions and the denial of his motion to suppress the scientific test which showed methamphetamine and amphetamine in his urine. In Case No. A98A0276, Helmeci appeals the trial court's denial of his motion to remain in the local jail in Cherokee County pending his appeal.

## Case No. A97A2359

1. Helmeci challenges the trial court's denial of his motion to suppress the urine test results. Helmeci contends that the State failed to prove that the procedures used to analyze his urine were approved methods of testing pursuant to the Georgia Administrative Procedure Act, see OCGA § 50-13-1 et seq. He also contends that the State failed to establish that the test machine was operated with all of its operating components attached and in good working order. The trial court's findings as to disputed facts in a ruling on a motion to suppress are upheld absent clear error; however, "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

After the collision, a state trooper read Helmeci his implied consent rights pursuant to OCGA §§ 40-5-55 and 40-5-67.1, and Helmeci consented to give the State blood and urine samples. Although the blood sample was negative for drugs and alcohol, tests performed by the Division of Forensic Sciences of the Georgia Bureau of Investigation (DFS or the crime lab) revealed that Helmeci's urine contained methamphetamine and amphetamine. These tests were performed by a certified toxicologist on a Hitachi 911 Immunoassay Urine and Blood Analyzer and a gas chromatograph with an ion trap detector. The State presented these test results to support its charge that Helmeci drove while "there [was] any amount of . . . a controlled substance . . . present in [his] . . . urine, . . . including the metabolites and derivatives of [such]." OCGA § 40-6-391 (a) (6). Amphetamine and methamphetamine are two such controlled substances. See

OCGA §§ 16-13-21 (4); 16-13-26 (3) (A) and (B). This evidence also supported the indictment's charge that Helmeci possessed methamphetamine and amphetamine in violation of OCGA § 16-13-30.

In moving to suppress this evidence, Helmeci argued that the crime lab's urinalysis did not meet the admissibility requirements of OCGA § 40-6-392 (a) (1). Because Helmeci was involved in a fatal accident, he was deemed to have consented "subject to [OCGA §] 40-6-392," to a drug test of his urine. OCGA § 40-5-55 (a). OCGA § 40-6-392 (a) (1) (A) states that "[u]pon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person in violation of [OCGA §] 40-6-391, evidence of the amount of alcohol or drug in a person's blood, *urine*, breath, or other bodily substance at the alleged time, as determined by a chemical analysis . . . shall be admissible. . . . Chemical analysis of the person's . . . urine . . . *to be considered valid under this Code section*, shall have been performed according to *methods approved* by the Division of Forensic Sciences of the Georgia Bureau of Investigation. . . . [That agency] *shall approve . . . requirements for properly operating and maintaining any testing instruments*." (Emphasis supplied.) In such cases as *State v. Holton*, 173 Ga. App. 241, 242 (1) (326 SE2d 235) (1985) and *Corner v. State*, 223 Ga. App. 353, 354 (477 SE2d 593) (1996), we held the DFS was required to substantially comply with the requirements of the APA, in "approving" those "methods" of testing referred to in § 40-6-392 (a) (1). Among its other provisions, the APA declares invalid agency rules which are not "published or made available for public inspection." OCGA § 50-13-3 (b).

Helmeci claimed that because the DFS had not published regulations governing the equipment and procedures used to test urine samples taken pursuant to OCGA § 40-5-55, those methods were not "approved" pursuant to § 40-6-392 and the APA. However, effective May 1, 1997, the legislature enacted OCGA § 35-3-155 as part of a comprehensive overhaul of the statutes dealing with the DFS. This new statute provides: "Unless otherwise specifically provided by law, technical, scientific, and similar processes, procedures, guidelines, standards, and methods for the collection, preservation, or testing of evidence adopted by the division shall not be subject to the provisions of Chapter 13 of Title 50, the 'Georgia Administrative Procedure Act.' "[1] Thus, under the new statute, the APA does not apply to the

---

[1] Neither the State nor the defendant brought this recent change in the law to the attention of this Court in their original briefs. Nor was it raised by the parties in connection with the motion for reconsideration. The new statute was first raised in an amicus curiae brief filed by the State Attorney General's office in support of the State's motion for reconsideration. We take this opportunity to remind the parties of their obligation to apprise this Court of all relevant statutory and case law in connection with their case, particularly where the law has been recently changed. We also wish to commend the Attorney General's office

type of testing procedures used by the DFS in this case.

The question thus arises whether the new statute should be given application in this matter where the incident occurred on May 2, 1995. OCGA § 35-3-155 became effective on May 1, 1997. See Ga. L. 1997, pp. 1421, 1436. Our Supreme Court has clearly stated that generally, in criminal cases, "an appellate court applies the law as it exists at the time its opinion is rendered." *State v. Martin*, 266 Ga. 244, 245 (1) (466 SE2d 216) (1996); see also *Hill v. Willis*, 224 Ga. 263, 265 (161 SE2d 281) (1968); *Houston v. State*, 192 Ga. App. 73, 74 (383 SE2d 571) (1989). Therefore, unless application of the new statute in this case violates constitutional principles, we are bound to apply it.

As an initial matter, we note that this Court is generally without jurisdiction to rule on the constitutionality of a statute. See *Wright v. Transus, Inc.*, 209 Ga. App. 771, 773-774 (2) (434 SE2d 786) (1993). Moreover, the Supreme Court has clearly held that retroactive application of a statute dealing with evidentiary matters such as those in this case does not violate constitutional principles. In *Martin v. State*, 217 Ga. App. 860 (460 SE2d 92) (1995), this Court reversed the denial of a motion to suppress breath test results due to the failure of the arresting officer to utilize the implied consent warning set forth in a recently enacted amendment to OCGA § 40-5-67.1 (b). After our decision, however, in August 1995, the legislature amended the statute a second time to make it applicable only to stops made after April 21, 1995. The Supreme Court affirmed our analysis, but reversed our decision, holding that the August 1995 amendment, passed after our decision, controlled since it was the law in force at the time of its decision. The court held that "[t]he August amendment does not violate federal or State ex post facto constitutional provisions. The August amendment modifies the scope of evidence which may be offered in a DUI trial. It does not affect the manner or degree of punishment and does not alter any substantive rights conferred on [the defendant] by law." (Citations omitted.) *State v. Martin*, 266 Ga. at 245-246 (3).

Although we have serious concerns with the application of any statute in a manner which retroactively alters the rights of a criminal defendant, substantively or otherwise, we are bound by the decisions of our Supreme Court, and therefore hold that OCGA § 35-3-155 is applicable in this appeal. Accordingly, the trial court correctly denied Helmeci's motion to suppress on this ground.

Helmeci also contends that the State presented insufficient evi-

for its efforts in this matter and in bringing this issue to the attention of the Court. Without the input of the Attorney General, there is a possibility that the change in the law would not have been considered in our decision in this matter.

dence that the urinalysis machine was operated with all of its electronic and operating components prescribed by its manufacturer properly attached and in good working order, as required by OCGA § 40-6-392 (a) (1) (A). In particular, Helmeci contends that Donald Dicks, the DFS toxicologist who testified at trial, was not qualified to testify because he admitted he had not seen the design plans for the machine and was only familiar with its internal electronics as an operator, not as an electrician. This contention is without merit. Dicks testified that he was familiar with the machines and their operation and that they were in proper working condition. He testified that DFS can tell whether a machine is working properly by running "controls" provided by the manufacturer. "The statute does not demand that the examiner have an expert's knowledge of the underlying scientific principles governing the functioning of the machine." *Dotson v. State*, 179 Ga. App. 233, 234 (2) (345 SE2d 871) (1986).

2. Helmeci contends insufficient evidence supports his convictions because no evidence showed he was driving the dump truck at the time of the collision. On appeal, we review the evidence in a light most favorable to the verdict to determine whether a rational trier of fact could have found Helmeci guilty of these offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Coates v. State*, 216 Ga. App. 93, 94 (1) (453 SE2d 35) (1994). A trooper who arrived on the scene shortly after the collision determined that the dump truck belonged to Mr. Helmeci, who was found at the scene. The trooper also identified another man who had been in the truck with Helmeci and described that man as "crippled." The trooper read Helmeci the implied consent warnings and took him to the hospital, where he voluntarily gave blood and urine samples. At trial, he identified Helmeci as the operator of the dump truck. Helmeci did not testify at trial, and nothing in the record shows he ever claimed he was *not* driving the truck. Likewise, no evidence showed the handicapped man in the dump truck with Helmeci was its driver. The evidence presented allowed the jury to determine Helmeci drove the dump truck and to exclude this alternative hypothesis and all others. *Coates*, supra; see also *Smith v. State*, 222 Ga. App. 701, 702 (1) (475 SE2d 715) (1996).

3. Helmeci contends that his conviction for possession of a controlled substance, a felony, merged into his conviction for driving with a controlled substance in his urine, a misdemeanor. He contends that because evidence that he possessed a controlled substance in his urine was used up in proving the misdemeanor DUI charge, he cannot also be convicted of the felony possession charge. This contention is without merit.

"At common law, a merger occurred only when the same act constituted both a felony and a misdemeanor; the misdemeanor merged

into the felony. The rule had no application when both offenses were either misdemeanors or felonies. In Georgia, however, [after passage of OCGA §§ 16-1-6 and 16-1-7] . . . a *felony* may merge into *another felony* which requires an additional element or a more culpable mental state or a more serious injury or risk of injury to the same person, property, or public interest." (Citations omitted; emphasis supplied.) *Pryor v. State*, 238 Ga. 698, 700-701 (234 SE2d 918) (1977). Helmeci has cited no cases supporting the proposition that a felony may merge into a misdemeanor, and we decline to adopt such a proposition. Under Helmeci's argument, an individual who has committed the felony of possession by ingesting a controlled substance could avoid conviction for such felony when driving a vehicle while under the influence of the possessed drugs, a misdemeanor. Such a result defies common sense and is not required by the statute.

4. We also address Helmeci's claim that the court improperly required him to pay $9,345.98 in restitution to the victim's widow, an amount representing the unreimbursed expenses of the victim's funeral. We reject Helmeci's claim that the settlement monies received by the widow in settlement from Helmeci's liability insurance company must offset the amounts ordered as restitution, especially where evidence showed the widow would not receive any payment from the settlement for many years and no evidence showed any part of the settlement was intended to cover the victim's funeral expenses. Furthermore, the trial court was not required to inquire into Helmeci's financial condition, his ability to pay, or his earning capacity where the defendant did not testify and offered no evidence on those issues. See *Cheeks v. State*, 218 Ga. App. 212, 213-214 (460 SE2d 860) (1995). However, because the record does not reflect that the trial court actually considered the remaining factors enumerated in OCGA § 17-14-10, and because no written findings were made on these factors, we must reverse the restitution award and remand the issue of restitution for reconsideration. Written findings of fact relating to each of the factors set forth in § 17-14-10 should be made upon reconsideration. See *Slater v. State*, 209 Ga. App. 723, 725-726 (4) (434 SE2d 547) (1993); *Garrett v. State*, 175 Ga. App. 400, 403 (1) (333 SE2d 432) (1985).

## Case No. A98A0276

5. In Case No. A98A0276, Helmeci appeals the trial court's denial of his motion under OCGA § 42-5-50 (c) to remain in the Cherokee County jail pending the outcome of his appeals. That statute provides that, if "the attorney for the convicted person shall file a written request with the court setting forth that the presence of the convicted person is required within the county of the conviction, or

incarceration, in order to prepare and prosecute properly the appeal of the conviction, the convicted person shall not be transferred to the correctional institution . . . [but] shall remain in the custody of the local jail or lockup until all appeals of the conviction shall be disposed of" or until the attorney files an affidavit stating that the convicted person's presence is no longer required. OCGA § 42-5-50 (c).

The statute is clearly couched in mandatory language, indicating that a trial court has no discretion in denying a request to remain in the county pending appeal. The State, however, cites *Whiddon v. State*, 160 Ga. App. 777, 783-784 (9) (287 SE2d 114) (1982), a case decided prior to the enactment of OCGA § 42-5-50 (c), for the proposition that the trial court may order a prisoner transferred if conditions at the county jail render the jail insecure or unsafe for the prisoner. In *In re Irvin*, 254 Ga. 251, 253-254 (328 SE2d 215) (1985), the Supreme Court overruled *Whiddon* to the extent that it held a judge could sua sponte order a prisoner transferred to another facility if it deemed the county insecure, noting that "[t]he legislature has vested the sheriff alone with the administrative authority to order such transfers. OCGA § 42-4-4 (a) (3)." Id. at 253. However, the Court affirmed the proposition that the court could do so upon proper motion with all interested parties, including the sheriff, before the court. Id.

We need not decide whether *Whiddon* and *Irvin* remain viable under the new statute, for it is clear that the conditions authorizing transfer in those cases are not present in this case. Although the State argues that transfer was authorized due to overcrowding at the county jail, the jail administrator, Harvey Tyrone Duke, testified at the hearing that the prison was then holding 138 prisoners, including Helmeci, two fewer than its capacity of 140 prisoners. Seventeen other prisoners were being held in facilities in other jurisdictions. Duke did not testify that keeping Helmeci at the facility would create an insecure or unsafe condition. Indeed, he admitted that he could house Helmeci if the judge required him to. He also admitted that the jail was continuing to accept new arrestees, although many had to be contracted out to other facilities in order to remain within the jail's capacity.

Under these circumstances, the trial court erred in denying Helmeci's motion to remain in the county jail pending the disposition of his appeals. Although retaining Helmeci in the county jail might necessitate transferring other prisoners to facilities in other counties, it must be remembered that Helmeci has a *statutory right* to remain in the county during his appeals, and that the county has a concomitant obligation to accommodate that right. The fact that his presence might cause some inconvenience to the county does not mean that it would result in an insecure or unsafe condition. Accordingly, Helmeci

has the right to remain in the county jail pending the disposition of all appeals in this case, including any possible appeal to the Supreme Court.

*Judgment of conviction affirmed in Case No. A97A2359, award of restitution reversed, and case remanded with direction. Judgment reversed in Case No. A98A0276. Pope, P. J., and Johnson, J., concur.*

DECIDED MARCH 2, 1998

*Virgil L. Brown & Associates, Bentley C. Adams III, James D. Rogers*, for appellant.
*Garry T. Moss, District Attorney*, for appellee.