## A00A0415. THE STATE v. CORRIHER.
(533 SE2d 800)

BLACKBURN, Presiding Judge.

The State appeals the trial court's order granting Ralph Sloan Corriher's motion to suppress the results of his breath test. The trial court determined that the officer who administered the Intoxilyzer test to Corriher lacked a valid permit, thereby invalidating the test pursuant to OCGA § 52-7-12 (c) (1). For the reasons set forth below, we reverse the trial court.

On appeal from a trial court's grant of a motion to suppress, the trial court's findings of fact are accepted unless they are clearly erroneous; "however, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Punctuation omitted.) *Helmeci v. State,* 230 Ga. App. 866 (1) (498 SE2d 326) (1998). In the present case, Corriher was charged by accusation with two counts of boating under the influence of alcohol, see OCGA § 52-7-12 (a) (1) and (4), and one count each of possession of marijuana and pulling a skier without a mirror or observer. In moving to suppress the results of the Intoximeter 5000,

Corriher argued that the Department of Natural Resources (DNR) could not meet the admissibility requirements of OCGA § 52-7-12 (c) (1), which requires that the breath analysis must have been performed "according to methods approved by the Division of Forensic Sciences [DFS] of the Georgia Bureau of Investigation and by an individual possessing a valid permit issued by the [DFS] for this purpose."

Generally, the Administrative Procedure Act (APA) applies to DFS. See *Helmeci*, supra at 867. See also *State v. Holton*, 173 Ga. App. 241, 242 (1) (326 SE2d 235) (1985); *Corner v. State*, 223 Ga. App. 353, 354 (477 SE2d 593) (1996). *Helmeci*, *Holton*, and *Corner* involved violations of OCGA § 40-6-392 (a) (1), driving while intoxicated, a provision substantially identical to OCGA § 52-7-12 (c), boating while intoxicated. "Among its other provisions, the APA declares invalid agency rules which are not 'published or made available for public inspection.' OCGA § 50-13-3 (b)." *Helmeci*, supra at 867.

Corriher contends that the State is unable to support its burden of proof regarding the proper administration of the breath test because there were no policies and procedures promulgated by DFS which approved the instrument or the operator for its use by DNR. The State contends that the instrument and the operator fall within the exception to the APA requirements created in OCGA § 35-3-155 which was enacted as part of a comprehensive overhaul of the statutes dealing with DFS. This Code section provides:

> Unless otherwise provided by law, technical, scientific, and similar processes, procedures, guidelines, standards, and methods for the collection, preservation, or testing of evidence adopted by the division shall not be subject to the provisions of Chapter 13 of Title 50, the "Georgia Administrative Procedure Act."

The trial court determined that this Code section exempted DFS from the publication requirements of the APA with regard to the method for administering the Intoxilyzer test (as previously determined in this Court by *Helmeci*, supra), but that the statute did not exempt it from publishing the procedure for becoming certified to administer an Intoxilyzer test, a question of first impression.

Citing to *Dept. of Ed. v. Kitchens*, 193 Ga. App. 229 (387 SE2d 579) (1989), the trial court determined that it must construe the exemption in OCGA § 35-3-155 narrowly. The subject exemption here, the Georgia Forensic Sciences Act of 1997, which is promulgated in OCGA § 35-3-155, was not addressed in *Kitchens* which simply interpreted the APA. It is a separate legislative act from the APA and was enacted *after Kitchens*. In *Kitchens*, this Court found that

the Board of Education was not excluded from the requirements of the APA:

> Construing the language of OCGA § 50-13-2 (1) as a whole so as to give effect to the legislative intent of the entire statute, we find that the exclusion of "any school, college, hospital, or other such educational, eleemosynary, or charitable institution" was intended to apply only to those institutions which provide educational or charitable services directly, and not to the administrative bodies through which they are regulated.

(Citation omitted.) Id. at 231. In *Kitchens*, this Court interpreted provisions of the APA; in the present case, we must interpret provisions of a separate act, the Georgia Forensic Sciences Act of 1997, which would have no application to the Board of Education issue raised in *Kitchens*. It is within this Act that the legislature specifically enacted additional exemptions to the APA. See Ga. L. 1997, p. 1421; OCGA § 35-3-155. The Georgia Forensic Sciences Act of 1997 was a comprehensive overhaul of statutes dealing with the DFS. See *Helmeci*, supra at 867.

> Where the language of a statute consists of common, ordinary words, and there is nothing to show that any unusual meaning is to be attached thereto, the court cannot deny the language its ordinary, usual signification; nor is the court required to give the language a forced and strained interpretation.

*Sheffield v. Cotton States Mut. Ins. Co.*, 141 Ga. App. 861, 863 (234 SE2d 695) (1977). OCGA § 35-3-155 excludes technical standards and procedures for the collection and testing of evidence. Even accepting a narrow construction of the statute, the officer's training falls within the exception without expanding its plain language. Clearly, the procedure by which the officer obtained a DFS certificate to operate an Intoximeter 5000 is a technical procedure encompassed within the collection and testing of evidence. Our finding is also consistent with the legislature's intent in streamlining DFS' duties and responsibilities by enacting the Georgia Forensic Sciences Act of 1997.

*Judgment reversed. Eldridge and Barnes, JJ., concur.*

DECIDED APRIL 18, 2000.

*Jerry Rylee, Solicitor, Larry A. Baldwin II, Assistant Solicitor,* for appellant.

*Jeffrey R. Sliz,* for appellee.