## A00A0417. THE STATE v. BOWEN.
(537 SE2d 417)

SMITH, Presiding Judge.

Reed Stephens Bowen was arrested for boating under the influence ("BUI"). See OCGA § 52-7-12 (a) (4). Department of Natural Resources rangers gave Bowen his implied consent notice and then a breath test. Bowen moved to suppress the results of the test. The trial court found that the Georgia Bureau of Investigation ("GBI") had not published its procedures for granting permits for the administration of breath, blood, and urine tests under the BUI provisions of the Georgia Boat Safety Act. See OCGA § 52-7-12. Holding this failure to publish to be a violation of the Administrative Procedure Act (the "APA"), OCGA §§ 50-13-1 through 50-13-44, the trial court granted Bowen's motion to suppress. On appeal, the State argues that the GBI's procedures for awarding permits to breath, urine, or blood test operators are not subject to APA requirements. We disagree and affirm.

The trial court's findings as to disputed facts in a ruling on a motion to suppress will be upheld absent clear error; however, "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. [Cits.]" *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). The facts here are not in dispute.

The State's sole contention is that, pursuant to OCGA § 35-3-155, the GBI is not bound by provisions of the APA requiring it to publish its procedures for licensing individuals to administer breath tests under the BUI law. See OCGA § 50-13-3 (b). The State relies on an exemption from the APA for certain technical matters:

---

[23] See *Allen v. United States*, 164 U. S. 492, 501-502 (9) (17 SC 154, 41 LE 528) (1896).

> Unless otherwise specifically provided by law, technical, scientific, and similar processes, procedures, guidelines, standards, and methods for the collection, preservation, or testing of evidence adopted by the [Division of Forensic Sciences of the Georgia Bureau of Investigation] shall not be subject to the . . . Administrative Procedure Act.

(Punctuation omitted.) OCGA § 35-3-155. The State argues that the GBI's procedures for awarding permits to breath test operators are among the types of procedures, guidelines, or methods encompassed by the exemption.

The State recently made this same argument successfully to another panel of this court. In *State v. Corriher,* 243 Ga. App. 648 (533 SE2d 800) (2000), this court agreed with the State, holding that the procedure by which an officer obtains a certificate to operate an Intoximeter 5000 is such a "technical" procedure and is encompassed within the exemption provided by OCGA § 35-3-155.

We cannot agree with this conclusion. It is well established that in the interpretation of statutes, the primary rule is to discern the intention of the General Assembly. OCGA § 1-3-1. And the language used by the General Assembly in enacting OCGA § 52-7-12 weighs heavily against such a conclusion. OCGA § 52-7-12 (c) (1) creates the standard for blood, urine, and breath tests that are expressly admissible in a BUI case:

> Chemical analysis of the person's blood, urine, breath, or other bodily substance, to be considered valid under this Code section, shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose. The Division of Forensic Sciences of the Georgia Bureau of Investigation is authorized to approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits, which shall be subject to termination or revocation at the discretion of the Division of Forensic Sciences.

The GBI's authorization to establish the permitting requirements for test operators is contained in the second sentence of the statute and is completely distinct from its authorization to develop the methodology for performing the applicable chemical analyses. This does not lend itself to a finding that the GBI's standards for issuing permits to qualified individuals are part of a technical or sci-

entific method for collecting, preserving, or testing evidence.

We are also influenced by the GBI's treatment of similar permitting requirements under the DUI law. OCGA § 40-6-392 (a) (1) (A). The GBI has published detailed regulations for issuing operator permits for breath, blood, and urine analyses in DUI cases. Ga. Admin. Code Rules 92-3-.01 through 92-3-.05. Its rule regarding the methods for conducting the actual tests is separate. See Ga. Admin. Code Rule 92-3-.06.

The State's reliance on *Helmeci v. State*, 230 Ga. App. 866 (498 SE2d 326) (1998) is misplaced. In *Helmeci*, we rejected the defendant's argument that because the GBI had not published regulations governing the equipment and procedures for conducting urinalysis, his urine tests were inadmissible. The methodology for conducting urinalysis is squarely within the type of technical procedure covered by OCGA § 35-3-155 and is distinct from the rules for issuing a permit to conduct such a test.

The State encourages us in this case to interpret the technical exemption from the APA broadly enough to include these permitting requirements, as was done in *Corriher*. But we have previously acknowledged that the legislative intent of the APA was to provide "uniformity in administrative procedures," and we have held that "exclusions from the APA should be as few as possible and should not occur except for cause." (Punctuation omitted.) *Dept. of Ed. v. Kitchens*, 193 Ga. App. 229, 230 (2) (387 SE2d 579) (1989). Mindful that we have not chosen to interpret broadly exclusions from the APA, we decline to give OCGA § 35-3-155 the interpretation urged by the State and adopted in *Corriher*. We agree with the trial court, and we hold that the GBI's rules for issuing permits under OCGA § 52-7-12 are subject to APA publication requirements and are not exempted by OCGA § 35-3-155, thereby overruling *State v. Corriher*, supra.

The State does not contend that the GBI complied with the APA in promulgating its procedures for issuing permits to conduct breath tests, nor does the State contend the test results might be admissible other than under OCGA § 52-7-12 (c). It follows that the ranger who administered Bowen's breath test did not have a valid permit to do so under the BUI law and that the State cannot depend on OCGA § 52-7-12 (c) to establish the admissibility of the test results.

*Judgment affirmed. Johnson, C. J., Pope, P. J., Miller, Ellington, Phipps and Mikell, JJ., concur. Blackburn, P. J., and Ruffin, J., concur specially. Andrews, P. J., Eldridge and Barnes, JJ., dissent.*

BLACKBURN, Presiding Judge, concurring specially.

I concur fully in the analysis and judgment in this case. I write separately to make the point that this Court depends upon the parties involved to provide support in the record and in the law for their

respective positions on appeal. The majority properly affirms the trial court's grant of Bowen's motion to suppress certain test results, based upon the Georgia Bureau of Investigation's failure to publish its procedures for granting permits for the administration of breath, blood, and urine tests, holding that such failure was a violation of the Administrative Procedure Act, as outlined in the majority opinion.

The majority also seeks to overrule this Court's opinion in *State v. Corriher*, 243 Ga. App. 648 (533 SE2d 800) (2000), which case had not been decided by this Court at the time of the trial court's ruling in *Bowen*. *Corriher* reached the opposite result on the same issue, without benefit of input from Corriher.

Here, Bowen argues that the GBI's treatment of similar permitting requirements under the DUI law, which continue to be published, logically supports his contention that such permitting requirements under BUI law should also be published, given the similarity of the charges and procedures involved. See OCGA § 40-6-392 (a). I point out that the GBI's own actions in continuing to publish the permitting requirements under DUI law, while contending it has no duty to publish such requirements under BUI law is self-defeating. OCGA § 35-3-155 provides a general exception to the application of the APA. Its language gives no basis for concluding that it was intended to be applied differently to two such similar circumstances. It logically applies either to both or to neither. This argument provides a strong basis for determining the proper interpretation of OCGA § 35-3-155.

We note that the State's position was unopposed in *Corriher*, and thus this argument was not presented to this Court in that case. While reasonable minds can disagree as to the interpretation of the subject statutes, Bowen's argument is the most compelling. Thus, I agree with the majority's determination that *Corriher* should be overruled.

I am authorized to state that Judge Ruffin joins in this special concurrence.

ELDRIDGE, Judge, dissenting.

The majority parses OCGA § 52-7-12 (c) (1) and determines that although the APA does not apply to the first sentence, it applies to the second. I cannot agree.

OCGA § 52-7-12 (c) (1), regarding chemical testing to determine whether one is "boating" under the influence, mirrors OCGA § 40-6-392 (a) (1) (A) regarding the same chemical testing to determine whether one is "driving" under the influence. The language of both

statutes was adopted, respectively, in 1992[1] and 1988.[2] In 1997, however, the legislature "*consolidate[d]* and revise[d] the laws of this state relating to the Division of Forensic Sciences of the Georgia Bureau of Investigation and forensic testing of evidence."[3] In so doing, the legislature passed OCGA § 35-3-150 et seq. which outlined the duties of the GBI Forensic Division and permitted the division to adopt its own standards for chemical testing:

> The Division of Forensic Sciences of the Georgia Bureau of Investigation: (1) Shall provide a state-wide system of laboratories dedicated to conducting forensic analysis of evidence submitted to the laboratory by law enforcement agencies, prosecuting attorneys, coroners, and medical examiners; (2) Shall provide forensic services to the criminal justice system for the examination and analysis of evidence[;] (3) Shall establish standards for the identification, collection, transportation, and analysis of forensic evidence; (4) Shall facilitate independent testing or analysis of evidence within the possession, custody, or control of the division as provided in paragraph (3) of subsection (a) of Code Section 17-16-4, relating to discovery in criminal cases.[4]

The legislature went further and permitted the Forensic Division to develop its own written guidelines for the *administration* of chemical testing:

> The division shall: (1) Establish written standards and procedures for the *administration* of forensic testing. The division shall retain a copy of any procedure adopted pursuant to this paragraph which is modified for a period of five years from the date of its being superseded by the modification; (2) Adopt rules and regulations as required by law; and (3) In cooperation with the Georgia Peace Officer Standards and Training Council, *provide for the training and certification of operators of such breath test equipment.* A copy of such operator's certificate shall be prima-facie evidence in any civil, criminal, or administrative proceeding that such oper-

---

[1] Ga. L. 1992, p. 2079.

[2] Ga. L. 1988, p. 1896.

[3] (Emphasis supplied.) Ga. L. 1997, pp. 1421-1422. Thus, the majority's review of the language of the older statute for "legislative intent" makes little sense. The legislature spoke quite clearly in adopting OCGA § 35-3-150 et seq. regarding the responsibilities of the GBI Forensic Division.

[4] OCGA § 35-3-151.

ator was qualified to operate such equipment.[5]

After outlining the responsibilities of the Forensic Division and permitting the division to promulgate its own methods for the administration of tests, including certifying those who administer them, the legislature specifically exempted the methods promulgated by the Forensic Division from the APA:

> Unless otherwise specifically provided by law, technical, scientific, and similar processes, procedures, guidelines, standards, and *methods for the collection*, preservation, or testing *of evidence* adopted by the division shall not be subject to the provisions of Chapter 13 of Title 50, the "Georgia Administrative Procedure Act."[6]

Now, the majority holds that the legislature meant to exclude from the APA the methods the Forensic Division developed for the test, themselves, but to have the APA apply to the methods the division developed to certify the administrators of the tests. I cannot agree. Methods for administration are methods for administration. Administration is impossible without an administrator; the "methods developed for the administration" of chemical tests naturally include the administrators of those chemical tests. That is why the legislature permitted the division to certify its own test administrators and why a Forensic Division operator's certificate is prima facie proof that the operator is qualified. I find that the majority's distinction between test versus administrator has no rational basis under the statute, under the case law, under the legislative intent — which was to streamline the admissibility of chemical tests in criminal trials — or under plain old common sense.[7] The officer in this case was certified by the Forensic Division for operation of the Intoxilyzer 5000. His certificate was tendered. The Forensic Division's methods for certifying the officer are not applicable to the APA, regardless of whether the crime is prosecuted under OCGA § 52-7-12 or OCGA § 40-6-392. Granting Bowen's motion to suppress was error as a matter of law. Accordingly, I dissent.

I am authorized to state that Presiding Judge Andrews and Judge Barnes join in this dissent.

---

[5] (Emphasis supplied.) OCGA § 35-3-154.

[6] (Emphasis supplied.) OCGA § 35-3-155.

[7] See *Love v. State*, 271 Ga. 398, 399 (1) (517 SE2d 53) (1999) ("the Georgia General Assembly passed the Forensic Sciences Act, which made the APA inapplicable to the methods of evidence-testing adopted by the GBI's Division of Forensic Sciences"); *Price v. State*, 269 Ga. 222, 225 (4) (498 SE2d 262) (1998); *Hammontree v. State*, 236 Ga. App. 342, 343-344 (2) (512 SE2d 57) (1999).

Decided July 14, 2000 

*Jerry Rylee, Solicitor, Larry A. Baldwin II, Assistant Solicitor,* for appellant.

*Chandler & Britt, Walter M. Britt, Deborah F. Weiss,* for appellee.