## S00G1875. THE STATE v. BOWEN.
(547 SE2d 286)

THOMPSON, Justice.

Reed Stephen Bowen was charged with operating a boat while having an alcohol concentration of 0.10 or more grams (BUI), in violation of OCGA § 52-7-12 (a) (4). The trial court granted Bowen's motion to suppress the results of a breath test on the ground that the Department of Natural Resources ranger who administered the test did not possess a valid permit as required under OCGA § 52-7-12 (c) (1). The ruling was predicated on the failure of the Forensic Sciences Division of the Georgia Bureau of Investigation (the division) to publish its rules for granting permits for the administration of breath, blood and urine tests under the BUI statutes, which the trial court concluded was required under OCGA § 50-13-3 (b) of the Administrative Procedure Act (APA). The Court of Appeals affirmed. *State v. Bowen*, 245 Ga. App. 159 (537 SE2d 417) (2000). We granted the State's petition for writ of certiorari and reverse, holding that the division is exempted under OCGA § 35-3-155 from the publishing requirement of the APA.

OCGA § 50-13-3 (b) of the APA requires that any "rule, order, or decision" of an agency of the state be "published or made available for public inspection"; and in the absence of such publication, that rule, order, or decision is rendered invalid and may not be invoked by the agency. However,

[d]uring its 1997 legislative session, the Georgia General

Assembly passed the Forensic Sciences Act, [OCGA § 35-3-150 et seq.], which made the APA inapplicable to the methods of evidence-testing adopted by the GBI's Division of Forensic Sciences. OCGA § 35-3-155.

*Love v. State*, 271 Ga. 398, 399 (1) (517 SE2d 53) (1999). The exemption contained in OCGA § 35-3-155 provides:

Unless otherwise specifically provided by law, technical, scientific, and similar processes, procedures, guidelines, standards, and methods for the collection, preservation, or testing of evidence adopted by the division shall not be subject to the provisions of Chapter 13 of Title 50, the "Georgia Administrative Procedure Act."

In deciding that the issuance of operator permits does not fall within the OCGA § 35-3-155 exception, the trial court looked to OCGA § 52-7-12 (c) (1), a portion of the BUI statute which regulates the methodology of chemical analysis. OCGA § 52-7-12 (c) (1) provides:

Chemical analysis of the person's blood, urine, breath, or other bodily substance, to be considered valid under this Code section, shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose. The Division of Forensic Sciences . . . is authorized to approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits, which shall be subject to termination or revocation at the discretion of the Division of Forensic Sciences.

The trial court concluded that while the first sentence of that Code section is exempted from APA requirements, the second sentence is not. A majority of the Court of Appeals affirmed, creating a distinction between "technical . . . method[s] for collecting, preserving, or testing evidence" in the first sentence, and "permitting requirements for test operators" in the second sentence. *State v. Bowen*, supra at 160. To support that interpretation, the Court of Appeals relied on the fact that similar permitting requirements under the DUI statute are published by the GBI; and it applied the general rule that exclusions from the APA must not occur except for cause. See *Dept. of Ed. v. Kitchens*, 193 Ga. App. 229 (2) (387 SE2d 579) (1989). For the reasons which follow, we disagree with that analysis. Instead, we adopt

Judge Eldridge's dissent and find no rational basis for distinguishing between the evidence-testing methods which were specifically exempted from the APA publishing requirement in *Love*, supra, and the requirements for issuing operator permits in the present case.

In determining whether OCGA § 35-3-155 exempts permitting requirements from the provisions of the APA, we must consider the statute in relation to other statutes of which it is part, i.e., the Georgia Forensic Sciences Act of 1997, OCGA § 35-3-150 et seq. ("Act"). See *Ryan v. Commrs. of Chatham County*, 203 Ga. 730 (48 SE2d 86) (1948).

In OCGA § 35-3-151, the legislature delineated the responsibilities of the Division of Forensic Sciences, among which include the creation of a statewide system of laboratories to conduct forensic analysis of evidence submitted by law enforcement agencies. In addition, the division is required to promulgate rules and regulations to further these objectives, OCGA § 35-3-154, and to "provide for the training and certification of operators of such breath test equipment." OCGA § 35-3-154 (3). OCGA § 35-3-155, which follows, exempts from the provisions of the APA the "procedures, guidelines [and] standards . . . for the collection, preservation, or testing of evidence adopted by the division." Construing this exemption in conjunction with the entire Act, and harmonizing the provisions so as to ascertain the legislative intent, *Ryan*, supra at 732, we conclude that the publishing requirements for certification of operators fall within the purview of the statutory exemption. Accord *State v. Corriher*, 243 Ga. App. 648 (533 SE2d 800) (2000).[1] Thus, the language of OCGA § 35-3-155 supplies the "cause" to exclude application of the APA. Compare *Kitchens*, supra.

As Judge Eldridge noted, the distinction created by the majority of the Court of Appeals "between test versus administrator has no rational basis under the statute, under the case law, under the legislative intent – which was to streamline the admissibility of chemical tests in criminal trials – or under plain old common sense." *Bowen*, supra at 164 (Eldridge, J., dissenting).

In the present case, the State offered into evidence documentation showing that the ranger who administered Bowen's test was certified to perform chemical analysis on the equipment used. "A copy of such operator's certificate shall be prima-facie evidence in any civil, criminal, or administrative proceeding that such operator was qualified to operate such equipment." OCGA § 35-3-154 (3). Accordingly, Bowen's BUI conviction must stand.

---

[1] In *Bowen*, supra at 161, the Court of Appeals overruled *State v. Corriher*, supra. Based on the rule stated today, we reaffirm the holding in *Corriher*.

*Judgment reversed. All the Justices concur, except Sears, Carley and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

I strongly believe that the GBI's requirements for licensing an individual to conduct forensic chemical tests are not exempt under OCGA § 35-3-155 from the publication provision of the APA. Consistent with Judge Smith's excellent opinion for the Court of Appeals, I submit that such licensing requirements must be distinguished from the scientific and technical methods and procedures for actually preparing and conducting those tests and, therefore, I dissent.

Under the Georgia Forensic Sciences Act of 1997, the GBI's Division of Forensic Sciences (DFS) must adopt rules and regulations if required to do so by law. OCGA §§ 35-3-154 (2), 35-3-155.

> Unless otherwise specifically provided by law, technical, scientific, and similar processes, procedures, guidelines, standards, and methods for the collection, preservation, or testing of evidence adopted by [DFS] shall not be subject to the provisions of [the APA].

OCGA § 35-3-155. Thus, the APA is "inapplicable to the methods of evidence-testing adopted by [DFS]. [Cit.]" *Love v. State*, 271 Ga. 398, 399 (1) (517 SE2d 53) (1999). See also *Price v. State*, 269 Ga. 222, 225 (4) (498 SE2d 262) (1998); *Helmeci v. State*, 230 Ga. App. 866, 867-868 (1) (498 SE2d 326) (1998). The question is, therefore, whether this Court should extend the exemption from the APA set forth in OCGA § 35-3-155 beyond the methods of evidence-testing so that it will apply to the issuance of operator permits as well.

The Court of Appeals properly recognized that " '(e)xclusions from the (APA) should be as few as possible and should not occur except for cause.' " *Department of Ed. v. Kitchens*, 193 Ga. App. 229, 230 (2) (387 SE2d 579) (1989). "[I]n construing a statute so as to give effect to the legislative intent, a mere segment of the statute should not be lifted out of context and construed without consideration of all the other parts of the statute." *Jordan v. State*, 223 Ga. App. 176, 180 (2) (477 SE2d 583) (1996). Thus, we cannot isolate portions of the language in OCGA § 35-3-155 in order to make the exemption cover the licensing of test operators. When read as a whole, the language of the statute describes the course of preparation for and performance of actual tests on evidence. Giving the statutory language its requisite common and ordinary meaning, I can only conclude that the requirements for licensing of individuals to perform forensic tests are not incorporated within the exemption from the APA. As the Court of Appeals explained, the BUI statute itself recognizes the distinction

between methods for the performance of chemical analysis and the ascertainment of the qualifications and competence of, and the issuance of permits to, those individuals who conduct the analyses. OCGA § 52-7-12 (c) (1). See also OCGA § 40-6-392 (a) (1) (A) (the DUI counterpart). Indeed, the Forensic Sciences Act separately requires DFS to "provide for the training and certification of operators of breath test equipment." OCGA § 35-3-154 (3). Even the GBI makes the identical distinction by means of separate rules for operator permits which it published for DUI prosecutions and has, since the trial court's decision herein, extended to BUI prosecutions. Ga. Admin. Code Rules 92-3-.01 through 92-3-.05. Compare Rule 92-3-.06. By disregarding the distinction between testing methods and licensing requirements and extending the exception to the APA set forth in OCGA § 35-3-155 beyond the usual meaning of the words thereof, the majority has unacceptably given that statute a forced and strained construction. *Warren v. Warren*, 249 Ga. 130, 131-132 (287 SE2d 524) (1982).

I am authorized to state that Justice Sears and Justice Hines join in this dissent.

DECIDED JUNE 4, 2001 —<br>
RECONSIDERATION DENIED JUNE 25, 2001.

*Jerry Rylee, Solicitor-General, Larry A. Baldwin II, Assistant Solicitor-General*, for appellant.
*Chandler & Britt, Walter M. Britt, Deborah F. Weiss*, for appellee.