A03A0213. HILL et al. v. PALUZZI et al.
(581 SE2d 730)

RUFFIN, Presiding Judge.

A group of Carrington Park condominium owners ("the owners") sued developer Phillip Hill, several corporate entities purportedly owned or operated by Hill, and others for violating condominium association bylaws, improperly leasing condominium units, converting association funds, and misusing common areas. The owners sought both legal and equitable relief. On the day of trial, the parties

---

reached a settlement agreement, resulting in a consent decree that was made the order of the court. Approximately three weeks later, the owners moved the trial court to hold Hill and several of his companies ("the defendants")[1] in contempt for failing to comply with the decree. The trial court granted the motion, and the defendants appeal. For reasons that follow, we affirm in part and reverse in part.

"A trial court has wide discretion in determining whether its orders have been violated and such determination will not be disturbed absent a gross abuse of discretion."[2] We will affirm a trial court's ruling on a motion for contempt if there is any evidence to support it.[3]

The evidence is not in dispute. On March 26, 2002, the trial court entered a consent decree reflecting the parties' settlement agreement. As explained in the decree, the defendants agreed to pay the owners $120,000. The defendants made an initial $60,000 payment and, under the decree, were required to pay the remaining $60,000 on or before April 12, 2002. The decree further ordered the defendants to pay certain association fees on or before April 5, 2002. In addition, it permanently enjoined the defendants "and those parties acting in concert with the [d]efendants from leasing any condominium unit . . . unless they have received proper authorization in accordance with the Bylaws and Restrictions and Covenants of the Association." Apparently, Hill and his companies owned numerous units in the condominium building and, according to the owners, had violated association bylaws when leasing them.

The defendants did not make the $60,000 payment by April 12, 2002, and they failed to pay the required association fees. Furthermore, on April 1, 2002, one of Hill's companies leased a condominium unit to two individuals without obtaining the necessary approval from the association's board of directors. The owners moved the trial court to hold the defendants in contempt, asserting that the defendants had violated the court's decree by failing to pay the required sums and by entering into the lease agreement.

At a hearing on the motion, the defendants stipulated that they had not made the payments required by the decree. They also agreed that one of the corporate defendants entered into the lease agreement without board approval. They argued, however, that their failure to pay could not be addressed in a contempt proceeding and that the lease violation was not wilful.

Rejecting these arguments, the trial court found Hill in contempt

---

[1] Throughout this opinion, the term "defendants" refers to Hill and his corporate entities. Where necessary, we will discuss Hill and his entities separately.

[2] *City of Roswell v. Eller Media Co.*, 275 Ga. 379 (1) (566 SE2d 659) (2002).

[3] See id.

for not paying the required sums. It also found Hill and his corporate entities in contempt for leasing the condominium unit without board approval. In its contempt order, the trial court stated that Hill could purge himself of contempt by paying the association fees by April 23, 2002, and the $60,000 by April 26, 2002. The order further specified that failure to purge the contempt would result in Hill's incarceration until payment was made. Finally, the trial court directed Hill to pay the owners $1,500 in attorney fees relating to the contempt action.

Hill paid the attorney fees and association fees by April 23, 2002. On April 26, 2002, however, he asserted that he could not pay the remaining $60,000 and filed this appeal.

1. The defendants do not dispute that Hill's corporation leased a condominium unit on April 1, 2002, without board approval. Nevertheless, they argue that this conduct was not wilful and, therefore, cannot support a contempt finding.[4] We disagree.

The evidence shows that, on April 9, 2002, the lessee presented the lease to the condominium manager and requested access cards. The manager denied the request, informed the lessee about the consent decree, and instructed him to obtain board approval. As directed by the manager, the lessee submitted the lease to the association and sought the necessary approval, but did not move into the unit.

The defendants admit that they made a "mistake" in leasing the unit, but assert that this mistake was remedied when the lessee requested board approval before moving into the complex. As noted above, however, the court's decree prohibited the defendants from leasing any unit without board consent. Not only did they ignore this provision, they apparently neglected to inform the lessee about the consent decree or its leasing restrictions. And the "remedy" that occurred resulted from the lessee's actions, not from any conduct by the defendants. Under these circumstances, the trial court was authorized to find the defendants in wilful violation of the lease injunction.[5]

2. Hill also asserts that the trial court erred in finding him in contempt for not meeting the consent decree's payment terms. As an initial matter, Hill paid the association fees on April 23, 2002. To the extent he claims the trial court erroneously held him in contempt for not paying those fees, his claim is moot.[6] We agree with Hill, how-

---

[4] The defendants do not contend and we need not address whether the trial court erred in holding all of them in contempt for violating the lease provision, when only one of the corporate defendants entered the lease.

[5] See id.; *Johnson v. Kaplan*, 225 Ga. App. 53, 55-56 (1) (483 SE2d 292) (1997); *In re Smith*, 211 Ga. App. 493, 497-498 (4) (b) (439 SE2d 725) (1993).

[6] See *G.I.R. Systems v. Lance*, 228 Ga. App. 329, 330 (2) (491 SE2d 530) (1997).

ever, that his failure to pay the $60,000 required under the decree provides no grounds for a contempt ruling.

Although courts may enforce their orders through contempt proceedings, they cannot use their contempt power to compel compliance with a money judgment.[7] As explained by our Supreme Court, "[n]ormally, . . . a money judgment may be enforced only by execution thereon, not by contempt proceedings."[8] Any other rule would permit a court to incarcerate a debtor for contempt, thus violating the clear prohibition in our state constitution against "imprisonment for debt."[9]

The $60,000 payment required under the consent decree has not been reduced to a money judgment. In our view, however, this portion of the decree is analogous to such a judgment and not enforceable through contempt.[10] The decree specified the amount owed — $60,000 — and the owners sought recovery of this amount. And although the decree permitted installment payment, it detailed the number of installments, the amounts, and the date of payment. In short, the owners seek payment of a sum certain owed under the consent decree — a payment akin to a money judgment.[11]

Citing *Warehouse Carpet Sales & Svc. v. S. C. J. Assoc.*,[12] the owners argue that the consent decree is an interlocutory order, not a money judgment, and thus enforceable through contempt. In *Warehouse Carpet*, the defendants consented to an order directing them to pay specified sums into an escrow account during an extended delay in the proceedings. When the defendants failed to pay the required amounts, the trial court held them in contempt. We affirmed the contempt ruling, noting that "where . . . the order to pay is interlocutory in nature, contempt is the only method of enforcement available."[13]

Unlike in *Warehouse Carpet*, the consent decree in this case cannot be viewed as interlocutory. The decree settled all of the issues and specifically directed the owners to "file a dismissal with preju-

---

[7] See *McKenna v. Gray*, 263 Ga. 753, 755 (438 SE2d 901) (1994).

[8] Id. In certain cases, statutory authority permits contempt sanctions for failure to make a monetary payment. See id. at 756; OCGA § 19-6-4 (b) ("A grant of permanent alimony may be enforced either by writ of fieri facias or by attachment for contempt."). No such authority governs this case.

[9] Ga. Const. of 1983, Art. I, Sec. I, Par. XXIII. See also *State of Ga. v. Higgins*, 254 Ga. 88 (1) (326 SE2d 728) (1985); *London v. London*, 149 Ga. App. 805, 807 (1) (256 SE2d 33) (1979).

[10] See *McKenna*, supra at 754-756.

[11] See id. (consent judgment involving structured monetary settlement requiring future payments analogous to a money judgment). Cf. *Shelley v. Shelley*, 212 Ga. App. 651, 652-653 (442 SE2d 847) (1994) (consent decree that does not specify the amounts to which a party is entitled and does not contain terms from which such amounts can be ascertained is not akin to a money judgment).

[12] 170 Ga. App. 352 (317 SE2d 328) (1984).

[13] Id. at 352 (1).

dice" once the defendants paid the required funds. Even the owners acknowledged the finality of the decree, requesting after the settlement that the court enter judgment against the defendants for $120,000.

We recognize that, under the consent decree, the trial court "retain[ed] jurisdiction of [the] matter for the purpose of ensuring the parties' compliance with [the] Order and any Settlement Agreement entered into by the parties." But that language does not render the consent decree interlocutory. As explained by our Supreme Court, "[a] final decree disposing of all the substantial equities of the case is not made interlocutory by the mere reservation of the right to direct the mode of its execution."[14]

Furthermore, the monetary terms are not enforceable through contempt simply because the consent decree includes other provisions, such as the lease injunction, that may be subject to such a proceeding. Under OCGA § 23-4-37, "[i]f a decree is partly for money and partly for the performance of a duty, the former may be enforced by execution and the latter by attachment [against the person for contempt] or other process." The legislature thus addressed the very situation at issue here — a hybrid decree involving monetary payments and restrictions on conduct — and prescribed different methods for compelling compliance. Certainly, the hybrid nature of this decree does not open the monetary provisions to contempt proceedings.

On appeal, the owners also argue that the payment order is enforceable through contempt because Hill acquiesced in the consent decree and agreed, through that decree, to subject himself to contempt sanctions. Undoubtedly, Hill agreed to the settlement reflected in the consent decree and partially performed under the agreement. But we cannot understand how that acquiescence impacts this case. The key question is not whether Hill consented to the monetary terms of the decree, but whether those terms are properly enforced through contempt or through execution on a money judgment. Hill's participation in the settlement does not answer that question.[15] And the owners have cited no evidence that Hill specifically agreed to subject himself to contempt for nonpayment.

Hill did not abide by the monetary terms of the settlement agreement. Although that failure supports entry of and execution on a money judgment, it does not permit contempt proceedings. To find

---

[14] (Punctuation omitted.) *Johnson v. James*, 246 Ga. 680, 682 (272 SE2d 692) (1980). See also *Moody v. Muscogee Mfg. Co.*, 134 Ga. 721, 731-732 (2) (68 SE 604) (1910) (trial court's reservation of right in consent decree to make further orders necessary to carry out the intent and meaning of the decree does not render the decree interlocutory).

[15] The owners do not argue on appeal, and we do not find, that Hill waived his right to appeal the contempt judgment relating to the April 26, 2002 payment by paying the association fees and attorney fees on April 23, 2002.

otherwise would allow the trial court to incarcerate Hill for failure to pay a debt, in direct violation of the Georgia Constitution.[16] Accordingly, the trial court erroneously held Hill in contempt for not paying the $60,000 required by the consent decree.

3. Finally, Hill argues that the trial court erred in awarding the owners attorney fees because "the motion for contempt should not have been granted." As found in Division 1, however, the evidence supported the trial court's contempt finding regarding the lease violation. Furthermore, the record shows that Hill paid the assessed attorney fees on April 23, 2002. By making this payment, he waived his right to challenge the award on appeal.[17]

*Judgment affirmed in part and reversed in part. Smith, C. J., and Miller, J., concur.*

DECIDED MAY 5, 2003.

*Friedman, Dever & Merlin, H. Michael Dever, Patricia J. Duffy*, for appellants.
*Gregg Loomis*, for appellees.

---

[16] See Ga. Const. of 1983, Art. I, Sec. I, Par. XXIII.

[17] See *Curtis v. Curtis*, 255 Ga. 288, 289 (336 SE2d 770) (1985).