## A03A1676, A03A1677. HAMILTON CAPITAL GROUP, INC. v. EQUIFAX CREDIT INFORMATION SERVICES, INC. (two cases).
### (596 SE2d 656)

ADAMS, Judge.

Hamilton Automotive Mail Company, Inc. (HAMCO) filed a complaint and a motion for temporary restraining order and preliminary injunction against appellee Equifax Credit Information Services, Inc. (Equifax)[1] seeking, inter alia, to prevent Equifax from terminating the parties' Sales Agent Agreement. Although appellant Hamilton Capital Group, Inc. (HCG), who had a separate agreement with Equifax,[2] was not an original party to this litigation, a temporary restraining order (TRO) was entered by the court on March 8, 2002, restraining and enjoining Equifax from suspending, terminating or interrupting service to either HAMCO or HCG under its respective agreements with those parties. The order also specifically required HAMCO and HCG to pay for any services provided to them pursuant to the TRO and their agreements with Equifax.

It is undisputed that HCG requested services from Equifax under the terms of the TRO and Equifax provided these services. On

---

[1] Briefs in this case were filed by Equifax Information Services, LLC as the successor in interest to Equifax Credit Information Services, Inc.

[2] Although the agreements between HAMCO and Equifax and HCG and Equifax were not identical, these differences are not material to this appeal. Pursuant to the agreement between HCG and Equifax, HCG would provide Equifax with specified credit criteria and a geographic area, and Equifax, using its credit information databanks, would provide HCG with a list of consumers who met that criteria. This is referred to as "prescreening" potential credit customers.

November 7, 2002, Equifax filed a motion contending that HCG should be held in civil contempt of the TRO because HCG had failed to pay for all the services it had received from Equifax as required by the order.

At the contempt hearing, HCG argued that it should not be held in contempt of the TRO because Equifax had refused to provide it with a new "select" service which Equifax was providing to its competitors, and that as a result it had suffered a substantial loss of business. Thus, HCG argued that its failure to pay was not wilful since it resulted from this severe loss of business. The trial court found that the TRO required Equifax to provide HCG with only those services it had provided prior to the entry of the TRO, and that it was "clear" to the court that HCG continued to request services from Equifax even after Equifax had notified it that it would not provide it with the new select services. The trial court also expressed uncertainty over whether the evidence at the hearing established HCG's inability to pay, but further noted that assuming HCG was "unable to pay for the services, then they should not have ordered the services." The trial court thus rejected HCG's arguments and on January 2, 2003, entered an order finding it in civil contempt of the March 8, 2002 order. The contempt order also provided that HCG could purge itself of the contempt by paying Equifax $327,182.20 within ten days of the order, but that its failure to purge itself would result in judgment being entered against it for that amount. HCG did not purge itself of the contempt by paying the amount ordered, and on February 7, 2003, the trial court entered final judgment in favor of Equifax. HCG appeals from both the January 2, 2003 contempt order and the February 7, 2003 judgment; these appeals were docketed in this Court as Case Numbers A03A1676 and A03A1677, respectively.

1. We first address Equifax's argument that we lack jurisdiction over the appeal in Case No. A03A1676. Equifax contends that the contempt order from which the appeal was filed in that case was not a final, directly appealable order because it gave HCG the opportunity to purge itself and imposed no punishment against HCG.

On previous occasions, this Court has held that a civil contempt order which allows the contemnor to purge the contempt and does not impose a punishment is interlocutory in nature and thus not subject to a direct appeal. *Carter v. Data Gen. Corp.*, 162 Ga. App. 379, 380-381 (1) (291 SE2d 99) (1982); *In re Crudup*, 149 Ga. App. 214 (253 SE2d 802) (1979); *Lake v. Hamilton Bank of Dalton*, 148 Ga. App. 348, 349 (1) (B) (251 SE2d 177) (1978); *Harrell v. Peteet*, 134 Ga. App. 210 (214 SE2d 5) (1975). However, both our Supreme Court and this Court have allowed direct appeals under similar facts. *Spence v. The Woodman Co.*, 213 Ga. 573, 577 (100 SE2d 435) (1957); *Odom v.*

*McDilda*, 155 Ga. 688, 689 (1) (117 SE 649) (1923);[3] *DeKalb County v. Adams*, 262 Ga. App. 243, 245 (1) (585 SE2d 178) (2003).

Moreover, our previous cases dismissing these appeals as interlocutory did not consider the effect of OCGA § 5-6-34 (a) (2)[4] which provides, in relevant part, that a direct appeal may be taken from "contempt cases." As our Supreme Court has noted, subsections (a) (2) through (8) of OCGA § 5-6-34 "provide[ ] for the direct appeal of judgments or orders that may have an irreparable [or final] effect on the rights of parties, such as rulings in contempt, injunction, and mandamus actions." *In re Keith Paul*, 270 Ga. 680, 682 (513 SE2d 219) (1999). This approach appears sound, since "[t]he order adjudging a person in contempt means the trial court has passed upon the merits of the case and the order, in effect, is a final disposition of the contempt matter by that court, whether it involves an interlocutory order or a final judgment." *Ramsey v. Ramsey*, 231 Ga. 334, 336 (201 SE2d 429) (1973). Moreover, since, the primary purpose of a civil contempt is to coerce compliance with an order of the court, *Thedieck v. Thedieck*, 220 Ga. App. 764, 766 (1) (470 SE2d 265) (1996), it makes sense that once the trial court has entered an order coercing such compliance, a party may directly appeal that order.

Based on the foregoing, we now conclude that the better approach is to allow direct appeals from contempt orders even if the contemnor is given the opportunity to purge the contempt before punishment is imposed. It follows that *Carter v. Data Gen. Corp.*, 162 Ga. App. 379; *In re Crudup*, 149 Ga. App. 214; *Lake v. Hamilton Bank of Dalton*, 148 Ga. App. 348; and *Harrell v. Peteet*, 134 Ga. App. 210, must be overruled to the extent they hold otherwise.

2. Turning to the merits of this appeal, we have reviewed HCG's argument challenging the order of contempt and entry of final judgment and find no basis for reversal.

> The defenses to both civil and criminal contempt are that the order was not sufficiently definite and certain, was not violated, or that the violation was not wilful (e.g., inability to pay or comply). *Schiselman v. Trust Co. Bank*, 246 Ga. 274, 277 (271 SE2d 183) (1980). If there is any evidence in the record to support a trial judge's determination that a party either has or has not wilfully disobeyed the trial court's order,

---

[3] But see *Dowdy v. Palmour*, 251 Ga. 135, 141 (1) (304 SE2d 52) (1983), in which the Supreme Court declined to address the issue of whether a finding of contempt without the imposition of punishment is directly appealable, holding that since its jurisdiction in that case was predicated upon its grant of certiorari, it would not consider this issue.

[4] Formerly Code Ann. § 6-701 (a) (3) enacted as part of the Appellate Practice Act, Ga. L. 1965, p. 18.

the decision of the trial court will be affirmed on appeal. *Crowder v. Crowder*, 236 Ga. 612 (225 SE2d 16) (1976). (T)he question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion. (Cits.) *Wilkerson v. Tolbert*, 239 Ga. 702, 705 (238 SE2d 338) (1977).

(Punctuation omitted.) *Warehouse Carpet Sales &c. v. S.C.J. Assoc.*, 170 Ga. App. 352, 353 (317 SE2d 328) (1984).

There is no question that the TRO was sufficiently definite and certain and clearly required HCG to pay Equifax for the services Equifax provided to it pursuant to the TRO. Although HCG argues that the trial court erred in finding wilfulness because the evidence established its inability to pay and that such inability was caused by Equifax's refusal to provide it with the new select service Equifax was providing to HCG's competitors, the trial court did not abuse its discretion by rejecting this argument. As the trial court noted, the TRO did not require HCG to pay anything unless it took the affirmative act of ordering services from Equifax and the evidence showed that HCG continued to order services from Equifax even after it knew that Equifax refused to provide it with the new select service. Moreover, the burden of proof was on HCG as the alleged contemnor to show its inability to pay. See *Mahaffey v. Mahaffey*, 238 Ga. 64, 65 (230 SE2d 872) (1976). An affidavit from HCG's vice-president states that "HCG lacks the ability to pay the amount claimed." This conclusory statement falls far short of the required showing. No balance sheets or lists of assets and liabilities were presented. There was no showing that HCG made any effort to borrow the money or make even partial payments. And the trial court was authorized to infer from the arguments made in judicio by HCG's counsel that the company was not in bankruptcy and was continuing to operate as a business. The evidence supports the trial court's finding of wilfulness. *Warehouse Carpet v. S.C.J.*, 170 Ga. App. at 353 (2).

We also take this opportunity to emphasize the general rule that contempt is not an available remedy to force payment of a money judgment. See OCGA § 23-4-37 ("If a decree is partly for money and partly for the performance of a duty, the former may be enforced by execution and the latter by attachment or other process."). As explained in the leading case, *Clements v. Tillman*, 79 Ga. 451, 454 (5 SE 194) (1888):

But if a court of equity should render a simple decree for money, on a simple money verdict, — a decree which it may now enforce by the ordinary common law process against

property, the failure to pay the decree would not be a contempt, nor could compulsory process against the person of the party in default be resorted to enforce payment.

See also *McKenna v. Gray*, 263 Ga. 753, 756 (438 SE2d 901) (1994); *Paschal v. Melton*, 174 Ga. 910, 912 (164 SE 757) (1932) (mere money liabilities are enforceable only by execution against property and not by attachment against person); *Everett v. Sparks*, 107 Ga. 48 (32 SE 878) (1899) (mere money liabilities are enforceable only by execution); *Ryan v. Kingsberry*, 88 Ga. 361 (3) (14 SE 596) (1891) (contempt authorized when specific statutory authority exists); *Hill v. Paluzzi*, 261 Ga. App. 123, 126, n. 9 (581 SE2d 730) (2003) (any other rule would violate state constitutional prohibition against imprisonment for debt); *London v. London*, 149 Ga. App. 805 (256 SE2d 33) (1979).[5]

The trial court's use of contempt in the case at bar was authorized under a narrow exception to the general rule. Contempt may be used by a court of equity to compel the payment of money when the order commanding the payment is interlocutory. "[W]here, as here, the order to pay is interlocutory in nature, contempt is the only method of enforcement available." *Warehouse Carpet v. S.C.J.*, 170 Ga. App. at 352 (1). Again, however, we would caution the bench and bar that this case presents the exception not the rule.

*Judgments affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 2, 2004.

*Richard E. Witterman, Jr.*, for appellant.
*Kilpatrick Stockton, Cindy D. Hanson, Steven D. Moore, Craig E. Bertschi*, for appellee.

---

[5] The use of compulsory process is authorized in divorce cases by OCGA § 15-1-4. See *Branch v. Branch*, 219 Ga. 601 (135 SE2d 269) (1964).